## BURNS *v.* OHIO.

No. 581.   Argued May 18, 1959.—
Decided June 15, 1959.

*Helen G. Washington* (appointed by this Court as counsel for petitioner in this case, 358 U. S. 939) argued the cause and filed a brief for petitioner.

*William M. Vance,* Assistant Attorney General of Ohio, and *Harry C. Schoettmer* argued the cause for respondent. With them on the brief were *Mark McElroy,* Attorney General of Ohio, and *C. Watson Hover.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The question presented in this case is whether a State may constitutionally require that an indigent defendant in a criminal case pay a filing fee before permitting him to file a motion for leave to appeal in one of its courts.

After a trial in Ohio in 1953, the petitioner was convicted of burglary and sentenced to life imprisonment.[1] That same year his conviction was affirmed without opinion by the Ohio Court of Appeals. Petitioner immediately filed a notice of appeal in the Court of Appeals but did nothing further until 1957, when he sought to file a copy of the earlier notice of appeal and a motion for leave to appeal in the Supreme Court of Ohio.[2] To these papers petitioner attached an affidavit of poverty which declared that he was "without sufficient funds with which to pay the costs for Docket and Filing Fees in this

---

[1] Petitioner was also convicted of larceny and sentenced to a term of seven years to be served concurrently with the burglary sentence.

[2] Despite the passage of years the appeal was timely. *State* v. *Grisafulli,* 135 Ohio St. 87, 19 N. E. 2d 645.

cause of action." He also attached a motion for leave to proceed *in forma pauperis.*

The Clerk of the Supreme Court of Ohio refused to file the papers. He returned them with the following letter:

"This will serve to acknowledge receipt of your motion for leave to proceed in forma pauperis, motion for leave to appeal and notice of appeal.

"We must advise that the Supreme Court has determined on numerous occasions that the docket fee, required by Section 1512 of the General Code of Ohio, and the Rules of Practice of the Supreme Court, takes precedence over any other statute which may allow a pauper's affidavit to be filed in lieu of a docket fee. For that reason we cannot honor your request.

"We are returning the above mentioned papers to you herewith." [3]

---

[3] The Rules of Practice of the Supreme Court of Ohio obviously referred to in the clerk's letter are Rules VII and XVII.
§ 1512 (Rev. Code § 2503.17):

"The clerk of the supreme court shall charge and collect the following fees:

"(A) For each case entered upon the minute book, including original actions in said court, appeal proceedings filed as of right, . . . for each motion . . . for leave to file a notice of appeal in criminal cases . . . twenty dollars . . . .

"(B) For filing assignments of error . . . upon allowance of a motion for leave to appeal . . . five dollars . . . .

"Such fees must be paid to the clerk by the party invoking the action of the court, before the case or motion is docketed and shall be taxed as costs and recovered from the other party, if the party invoking the action succeeds, unless the court otherwise directs."
Rule VII:

"Section 1. *Felony Cases.* In felony cases, where leave to appeal is sought, a motion for leave to appeal shall be filed with the Clerk of this Court along with a copy of the notice of appeal which was

Under Art. IV, § 2, of the State Constitution, the Supreme Court of Ohio has appellate jurisdiction in many types of cases including those "involving questions arising under the constitution of the United States or of this state" and "cases of felony on leave first obtained." [4] Since burglary is a felony in Ohio,[5] the Supreme Court had jurisdiction to review petitioner's conviction and petitioner sought to file his motion asking leave to appeal.[6] The filing fee required by the Supreme Court on a motion for leave to appeal is $20 [7] and if that fee is paid, and the

filed in the Court of Appeals, upon payment of the docket fee required by Section 2503.17, Revised Code.

. . . . .

"Section 4. *Appeal as of Right.* In any criminal case, whether felony or misdemeanor, if the notice of appeal shows that the appeal involves a debatable question arising under the Constitution of the United States or of this state, the appeal may be docketed upon filing the transcript of the record and any original papers in the case, upon payment of the fee required by Section 2503.17, Revised Code."
Rule XVII:
"The Docket Fees fixed by Section 2503.17, Revised Code, must be paid in advance. . . ."

[4] See also Ohio Rev. Code §§ 2953.02, 2953.08, which implement this constitutional provision.

[5] See Ohio Rev. Code §§ 2907.09, 1.06, 1.05.

[6] In his notice of appeal filed in the Court of Appeals, petitioner stated "This appeal is on questions of law and is taken on condition that a motion for leave to appeal be allowed." But in the motion for leave to appeal to the Supreme Court, petitioner stated, among other contentions, that his conviction conflicted with his "Constitutional Guarantees of the Fourteenth Amendment (14) to the Constitution of the United States; and, Article I, Section 10 of the Constitution of the State of Ohio." This might indicate that petitioner was claiming an appeal as of right to the Supreme Court. However, since petitioner has consistently characterized his appeal as one which requires leave, we so consider it here.

[7] See n. 3, *supra.*

papers are otherwise proper, the motion will be considered with the possibility that leave to appeal will be granted.

We granted certiorari and leave to proceed *in forma pauperis.* 358 U. S. 919. Subsequently, an order was entered, 358 U. S. 943, expressly limiting the grant of certiorari to the question posed by petitioner in his *pro se* petition which is restated at the outset of this opinion.[8]

The State's commendable frankness in this case has simplified the issues. It has acknowledged that the clerk's letter to petitioner is "in reality and in effect" the judgment of the Supreme Court. Only recently, that court had occasion to comment on the function of its clerk in these words:

"It is the duty of the clerk of this court, in the absence of instructions from the court to the contrary, to accept for filing any paper presented to him, provided such paper is not scurrilous or obscene, is properly prepared and is accompanied by the requisite filing fee."[9]

In a companion case, the court observed that its clerk "acts as the court in carrying out its instructions."[10] The State represented that the clerk had been instructed not to docket any papers without fees and also that the Supreme Court had not deviated from its practice in this respect. Moreover, the State asserted that it was impossible for petitioner to file any action at all in the Supreme

---

[8] As posed by petitioner, the question was

"Whether in a prosecution for Burglary, the Due Process Clause, And The Equal Protection Clause, of the Fourteenth (14) Amendment to the United States Constitution are violated by the refusal of the Supreme Court of Ohio, to file the aforementioned legal proceedings, because Petitioner was unable to secure the costs."

[9] *State ex rel. Wanamaker* v. *Miller,* 164 Ohio St. 176, 177, 128 N. E. 2d 110.

[10] *State ex rel. Wanamaker* v. *Miller,* 164 Ohio St. 174, 175, 128 N. E. 2d 108, 109.

Court without paying the fee in advance. There is no showing that these instructions have been modified or rescinded in any way and the Supreme Court has sanctioned the clerk's well-publicized procedure of returning pauper's applications, without exception, with the above-quoted form letter. This delegation to the clerk of a matter involving no discretion clearly suffices to make the clerk's letter a final judgment of Ohio's highest court, as required by 28 U. S. C. § 1257.

Although the State admits that petitioner "in truth and in fact" is a pauper, it presses several arguments which it claims distinguish *Griffin* v. *Illinois,* 351 U. S. 12, and justify the Ohio practice. First, the State argues that petitioner received one appellate review of his conviction in Ohio, while in *Griffin,* Illinois had left the defendant without any judicial review of his conviction. This is a distinction without a difference for, as *Griffin* holds, once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty. 351 U. S., at 18, 22. This principle is no less applicable where the State has afforded an indigent defendant access to the first phase of its appellate procedure but has effectively foreclosed access to the second phase of that procedure solely because of his indigency.

Since *Griffin* proceeded upon the assumption that review in the Illinois Supreme Court was a matter of right, 351 U. S., at 13, Ohio seeks to distinguish *Griffin* on the further ground that leave to appeal to the Supreme Court of Ohio is a matter of discretion. But this argument misses the crucial significance of *Griffin.* In Ohio, a defendant who is not indigent may have the Supreme Court consider on the merits his application for leave to appeal from a felony conviction. But as that court has interpreted § 1512 and its rules of practice, an indigent defendant is denied that opportunity. There is no

rational basis for assuming that indigents' motions for leave to appeal will be less meritorious than those of other defendants. Indigents must, therefore, have the same opportunities to invoke the discretion of the Supreme Court of Ohio.

The State's action in this case in some ways is more final and disastrous from the defendant's point of view than was the *Griffin* situation. At least in *Griffin,* the defendant might have raised in the Supreme Court any claims that he had that were apparent on the bare record, though trial errors could not be raised. Here, the action of the State has completely barred the petitioner from obtaining any review at all in the Supreme Court of Ohio. The imposition by the State of financial barriers restricting the availability of appellate review for indigent criminal defendants has no place in our heritage of Equal Justice Under Law.

What was said in *Griffin,* might well be said here: "We are confident that the State will provide corrective rules to meet the problem which this case lays bare." 351 U. S., at 20.[11]

The judgment below is vacated and the cause is remanded to the Supreme Court of Ohio for further action not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEWART took no part in the consideration or decision of this case.

---

[11] Shortly after this Court's decision in *Griffin* v. *Illinois, supra,* the Illinois Supreme Court promulgated Rule 65–1, which provides in part that any person sentenced to imprisonment who is "without financial means with which to obtain the transcript of the proceedings at his trial" will receive a transcript if it is "necessary to present fully the errors recited in the petition. . . ."

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN joins, dissenting.

It is the special obligation of this Court strictly to observe the limits of its jurisdiction. No matter how tempting the appeal of a particular situation, we should not indulge in disregard of the bounds by which Congress has defined our power of appellate review. There will be time enough to enforce the constitutional right, if right it be, which the Court now finds the petitioner to possess when it is duly presented for judicial determination here, and there are ample modes open to the petitioner for assertion of such a claim in a way to require our adjudication.

The appellate power of this Court to review litigation originating in a state court can come into operation only if the judgment to be reviewed is the final judgment of the highest court of the State. That a judgment is the prerequisite for the appellate review of this Court is an ingredient of the constitutional requirement of the "Cases" or "Controversies" to which alone "The judicial Power shall extend." U. S. Const., Art. III, § 2. That it be a "final judgment" was made a prerequisite by the very Act which established this Court in 1789. Act of September 24, 1789, § 25, 1 Stat. 85, now 28 U. S. C. § 1257. "Close observance of this limitation upon the Court is not regard for a strangling technicality." *Republic Natural Gas Co.* v. *Oklahoma*, 334 U. S. 62, 67. Such has been the undeviating constitutional, legislative and judicial command binding on this Court and respected by it without exception or qualification to this very day.

The requisites of such a final judgment are not met by what a state court may deem to be a case or judgment in the exercise of the state court's jurisdiction. See *Tyler* v. *Judges*, 179 U. S. 405; *Doremus* v. *Board of Education*,

342 U. S. 429. Nor can consent of the parties to the determination of a cause by this Court overleap the jurisdictional limitations which are part of this Court's being. Litigants cannot give this Court power which the Constitution and Congress have withheld. *Mansfield, C. & L. M. R. Co.* v. *Swan,* 111 U. S. 379, 382. The President of the United States himself cannot secure from this Court determination of a legal question except when such a question duly arises in the course of adjudication of a case or controversy, even though he asks for needed help in a great national emergency. See President. Washington's questions in 33 Writings of Washington (Fitzpatrick ed. 1940) 15–19, 28, and the correspondence between Secretary of State Thomas Jefferson and Chief Justice Jay, in 3 Correspondence and Public Papers of John Jay (Johnston ed. 1891) 486–489.

As the importance of the interrogator and the significance of the question confer no power upon this Court to render advisory opinions, a compassionate appeal cannot endow it with jurisdiction to review a judgment which is not final. One's sympathy, however deep, with petitioner's claim cannot dispense with the precondition of a final judgment for exercising our judicial power. If the history of this Court teaches one lesson as important as any, it is the regretful consequences of straying off the clear path of its jurisdiction to reach a desired result. This Court cannot justify a yielding to the temptation to cut corners in disregard of what the Constitution and Congress command. Burns has other paths to this Court to assert what, forsooth, all of us may deem a failure by Ohio to accord him—a constitutional right— other paths besides our indifference to the rules by which we are bound. Specifically, he has four obvious remedies for securing an ascertainment and enforcement of his constitutional claim by this Court without having

this Court treat the letter of a clerk of a court as a court's judgment. For although the caption of the case would indicate that our review was of the Supreme Court of Ohio, in fact the review can only be of the refusal of the clerk of that court to docket petitioner's papers until a twenty-dollar docket fee was paid. The Supreme Court of Ohio was not asked to consider the appeal, nor did it itself refuse to do so. The decisions in *State ex rel. Dawson* v. *Roberts,* 165 Ohio St. 341, 135 N. E. 2d 409, and *State ex rel. Wanamaker* v. *Miller,* 164 Ohio St. 174 and 176, 128 N. E. 2d 108 and 110, mandamus denied *sub nom. Wanamaker* v. *Supreme Court of Ohio,* 350 U. S. 881, demonstrate conclusively that the Ohio court has retained the ultimate power to determine what papers will be permitted to be filed. There is not the remotest indication in the record that this petitioner's claim to file his appeal without paying the customary filing fee, because of indigence, was brought to the attention of the Ohio Supreme Court, nor is there any showing in the record that in writing his letter the clerk was acting at the specific behest of that court in this case.

(1) Petitioner may make a direct application addressed in terms to the judges of the Supreme Court of Ohio. Such applications informally expressed by way of letters are frequently addressed to this Court, and are accepted here as the basis for judgments by this Court. We are not to assume that an application so addressed to the judges of the Ohio Supreme Court will not be transmitted to that court and acted upon by it. This is not merely an appropriate assumption about the functioning of courts. It is an assumption one can confidently make based upon the records in this Court. See *Wanamaker* v. *Supreme Court of Ohio, supra.* (Papers filed here in connection with the *Wanamaker* case make it clear that the Supreme Court of Ohio does consider letters

asking that that court instruct its clerk to accept petitions for filing.) The Supreme Court of Ohio might well yield to this claim of Burns as other courts in like situations have yielded since *Griffin* v. *Illinois*, 351 U. S. 12. But in any event, a denial of Burns' application or refusal to entertain it would constitute a judgment of that court as an appropriate prerequisite for review here.

(2) Ever since § 13 of the Act of September 24, 1789, 1 Stat. 81, as amended, 28 U. S. C. § 1651, this Court has had power to issue mandamus in protection of its appellate jurisdiction in order to avoid frustration of it. This is an exercise of anticipatory review by bringing here directly a case which could be brought to this Court in due course.

(3) Under the Civil Rights Act, R. S. § 1979, 42 U. S. C. § 1983, Burns, like others before him who have allegedly been denied constitutional rights under color of any statute of a State, may have his constitutional rights determined and, incidentally, secure heavy damages for any denial of constitutional rights. See *Lane* v. *Wilson*, 307 U. S. 268.

(4) Burns' claim, in essence, is unlawful detention because of a denial of a constitutional right under the Fourteenth Amendment. That lays the foundation for a habeas corpus proceeding in the United States District Court. See *Johnson* v. *Zerbst*, 304 U. S. 458. To be sure, if the right he claims be recognized in habeas corpus proceedings, he would not be released as a matter of course but merely conditionally on the State Supreme Court's entertaining his petition for review as an indigent incapable of meeting court costs. The contingent nature of the release would not impair the availability of habeas corpus. See *Chin Yow* v. *United States*, 208 U. S. 8.

Thus, it cannot be urged that necessity compels what the Constitution and statutes forbid—adjudication here of a claim which has not been rejected in a final judgment

of a state court. Adherence to the dictates of the laws which govern our jurisdiction, though it may result in postponement of our determination of petitioner's rights, is the best assurance of the vindication of justice under law through the power of the courts. We should dismiss the writ of certiorari inasmuch as there has been no final judgment over which we have appellate power.