## WHITNEY v. FLORIDA.

No. 68.   Argued October 19, 1967.—Decided November 13, 1967.

*Richard Kanner* argued the cause and filed a brief for petitioner.

*James T. Carlisle,* Assistant Attorney General of Florida, argued the cause for respondent.   With him on the brief was *Earl Faircloth,* Attorney General.

PER CURIAM.

The writ is dismissed as improvidently granted without prejudice to an application for a writ of habeas corpus in the appropriate United States District Court.

MR. JUSTICE DOUGLAS, dissenting.

The question presented here is whether Florida has deprived petitioner of equal protection or due process of law by summarily dismissing his collateral attack on a state criminal conviction without conducting an evidentiary hearing.   Because of the increasing tide of habeas corpus petitions brought by prisoners (see *Price v. Johnston,* 334 U. S. 266, 293)—many of whom find they must turn to federal courts to obtain a hearing—the question is of considerable importance.

I assume that the Federal Constitution does not compel the States to provide any remedy for collateral attack of criminal convictions.   Cf. *Townsend* v. *Sain,* 372 U. S. 293, 313, n. 9; *Griffin* v. *Illinois,* 351 U. S. 12, 18.   But when a State makes available a means for review, it is held to a "constitutional requirement of substantial equality and fair process."   *Anders* v. *California,* 386

U. S. 738, 744. It may not discriminate arbitrarily between persons applying for relief (*e. g., Burns* v. *Ohio,* 360 U. S. 252), and it must adhere to the requirements of due process. *Swenson* v. *Bosler,* 386 U. S. 258, 260. Though these rules were primarily developed with reference to appellate review, we have held them applicable with equal force to state post-conviction proceedings. *Smith* v. *Bennett,* 365 U. S. 708.

By Rule 1 of the Florida Rules of Criminal Procedure, Florida has provided a means of collateral attack.

In his application petitioner alleged that extensive pretrial publicity—including television broadcasts of confessions given by him—prevented selection of a fair and impartial jury. Petitioner further alleged that he asked his trial counsel to request a change of venue, but counsel refused to do so. The Florida District Court of Appeal held that no evidentiary hearing was necessary because venue objections could only be raised at trial and because venue was *res judicata* under the judgment in a prior collateral attack by petitioner (see *Whitney* v. *Cochran,* 152 So. 2d 727, 730 (Fla.)) that representation by trial counsel was adequate and not a farce or sham.

But this characterization and disposition of petitioner's allegations avoid the basic issue presented. Under *Entsminger* v. *Iowa,* 386 U. S. 748, a defendant who specifically asked his attorney to take a plenary appeal was denied a constitutional right when the attorney took only a truncated appeal. The allegations of petitioner here clearly constitute a prima facie case of violation of this principle.

My Brother HARLAN characterizes this crime as "a particularly brutal murder"—and so it was. But that does not alter the underlying constitutional question whether the atmosphere of the community had been so saturated by adverse publicity as to deprive the state trial of the

constitutional requirement of due process. *Sheppard* v. *Maxwell,* 384 U. S. 333. My Brother HARLAN states that from this record it is "inescapable" that petitioner's trial counsel "deliberately" chose to try the case before a jury that may have been exposed to petitioner's televised confessions. But with all respect, that is no answer to the present constitutional claim. Until we know the extent and degree of saturation of the public mind with the TV films, it is impossible to say whether or not counsel's failure to obtain a change of venue was harmless error under the ruling of *Chapman* v. *California,* 386 U. S. 18. Far more than mere trial tactics and strategy is involved. In such a case the denial of the defendant's rights is not cured by outstanding representation by counsel during the balance of proceedings. It is no answer for the Florida courts to say counsel never moved at trial for a transfer to a county not saturated with pretrial publicity; for this failure of counsel is the very heart of the wrong allegedly done to petitioner. Nor are *res judicata* principles applicable, for as I read *Whitney* v. *Cochran* the *Entsminger* right-to-counsel issue was neither raised nor decided.

I would vacate the judgment and remand to the Florida courts so that the State may give petitioner the evidentiary hearing to which he is entitled. We needlessly burden the federal regime* when we do not insist that Florida, which has provided a remedy, have the evidentiary hearing which will determine the nature and extent of the pretrial publicity and whether it was trivial or potentially damaging.

---

*Habeas corpus petitions and petitions under 28 U. S. C. § 2255 in the *federal courts* increased from 598 in 1941 to 2,314 in 1961 (Annual Rep. Adm. Off. U. S. Courts 1964, p. 155) and to 9,697 in the 1967 fiscal year. Annual Rep. 1967, p. II-56. *Of these, 5,948 were habeas corpus cases brought by state prisoners. Ibid.*

Mr. Justice Harlan, whom Mr. Justice Black joins, dissenting.

I would affirm the judgment of the state court. I can find no sound basis for this Court's not reaching the merits of the questions brought here for review, even though I believe that the writ should not have issued in the first place. Nor do I believe that a federal habeas corpus proceeding should be encouraged, which is the implicit effect of the Court's "without prejudice" dismissal, or, as my Brother Douglas suggests, that the case should be remanded to the state court for a hearing.

Petitioner was convicted of a particularly brutal murder, committed in the course of an armed robbery. At trial, with advice of counsel, he entered into a written stipulation conceded to be the virtual equivalent of a guilty plea, confessing the murder. Consequently, the only question argued to the jury by counsel was whether it would recommend mercy; the jury declined to do so, and a sentence of death was imposed.

Prior to his trial, petitioner had confessed to five other homicides and one attempted homicide. These confessions were not referred to at trial. They were, however, allegedly given wide publicity by television and radio stations in the area where trial occurred. Contending that this publicity had deprived him of the right to trial before an impartial jury, petitioner brought this collateral proceeding in the state courts.

The Florida District Court of Appeal, rejecting the argument that petitioner's claim was foreclosed by his failure to raise it in prior proceedings, held that as a matter of state law the principle of *res judicata* is applicable, in criminal cases, "only to those items *actually* raised in the prior proceedings." *Whitney* v. *State,* 184 So. 2d 207, at 209 (Fla.). (Emphasis in original.) On the merits the court rejected petitioner's claim, relying heavily on the fact that trial counsel had made no motion for a

change of venue, and had not even undertaken to exercise all of his peremptory challenges. Cf. *Beck* v. *Washington,* 369 U. S. 541, 557–558. The record also reveals that counsel conducted a vigorous *voir dire* during which, although for obvious reasons no mention of other crimes was made, each juror represented that he could and would judge the case solely on the basis of what was presented in court. The conclusion that trial counsel deliberately chose to risk the mercy of a local jury, rather than court more imponderable hazards elsewhere, seems inescapable.

After trial, new counsel sought to depict this perfectly understandable piece of strategy as but the product of incompetence so gross as to give rise to a constitutional claim that the petitioner was deprived of the effective assistance of counsel. In light of the record, and particularly defense counsel's extensive summation, which clearly evinces an effort to make the best of a hopeless case by trying to save defendant from the death penalty, the claim now made is little short of frivolous.

I can find in this straightforward train of events no room for questioning the validity of this state conviction from a federal constitutional standpoint, or for further prolonging the case.