## STATE OF NEW JERSEY IN THE INTEREST OF W. O., A JUVENILE.

Superior Court of New Jersey
Appellate Division

Argued November 20, 1967—Decided April 16, 1968.

360

Before Judges CONFORD, COLLESTER and LABRECQUE.

*Mr. Elliot M. Baumgart,* assigned counsel, argued the cause for appellant juvenile (*Messrs. Stephen R. Bing* and *Mark Gasarch,* of counsel and on the brief).

*Mr. James R. Zazzali,* Assistant Prosecutor, argued the cause for the State as respondent (*Mr. Brendan T. Byrne,* Essex County Prosecutor, attorney).

The opinion of the court was delivered by
LABRECQUE, J. A. D. W. O., a juvenile aged 17, appeals from his conviction in the Essex County Juvenile Court on charges of robbery and larceny.

The larceny complaint charged that on January 20, 1967 he took the sum of $9 from Edward James. The robbery complaint charged that, at the point of a black revolver, he took 81 cents from Ronald Chapman, $2 from William Chapman and $1 from Nathaniel Johnson on January 21, 1967.

Hearings on the two complaints took place on the same day, the January 21 complaint being first tried. Appellant contends that prior to the taking of testimony his counsel moved that all witnesses be sequestered. The motion was granted as to all except the two police officers (attached to the Youth Aid Bureau) who had signed the complaints. Later, when the three complaining witnesses to the occurrence of January 21 were called into the courtroom together, counsel moved to sequester them so that they would not be testify-

ing in one another's presence but they were permitted to remain.

In the absence of a stenographic record, a "statement of proceedings" was prepared by the trial judge pursuant to *R. R.* 1:6–3, made applicable by *R. R.* 2:6. It recited that Johnson and the two Chapman boys testified that they had been shopping on Springfield Avenue, Newark, when appellant, dressed in a black leather coat and a "tam" hat, came up to them and asked for money. He produced a revolver (William Chapman, the oldest of the three, didn't think it was a real one) which one of them thought was "as much as eight or nine inches long." Appellant thereupon took $2 from William, 81 cents from Ronald and $1 from Johnson and fled. The police were notified and, on the basis of a description obtained from the three boys, appellant was picked up. The three later identified him at the Fourth Precinct. Two of them testified that they had seen him once after the robbery, at which time he had again tried to obtain money.

The other complaining witness, Edward James, aged 14, testified that on January 20, as he was walking down Branford Place, Newark, the appellant and another boy asked him if he had 50 cents. When he said no, appellant, who was wearing a tam hat and a dark jacket, took his wallet containing $9 and fled. He, too, reported the incident to the police and picked out the appellant from a number of pictures shown to him by the police. Later, when the police brought appellant to Clinton Place Junior High School, he identified him in person.

Appellant denied being present on either occasion, asserting that he had never seen any of the complainants until the day they identified him and that on January 20 and 21 he was working for Harvey Smith, his brother-in-law, at the latter's furniture warehouse. Smith, called as a witness, was unable to positively state that appellant was on the job on the two days in question but said that he had a record book at home which would show this. He was excused from

the stand to secure the book and return with it but failed to do so. Later, after several telephone calls from the court, one of his employees produced a ledger which, upon examination, was found to contain nothing to indicate that appellant had been at work there on· January 20 or 21. This same employee was permitted to testify and said that. on some day — he did not know the day of the month but it was when appellant was accused of taking money from a boy — appellant had been working with him.

No case has been cited in which our courts have had occasion to pass upon whether a motion for sequestration is properly cognizable at the trial of a complaint under the Juvenile Act, *N. J. S.* 2A :4–1 *et seq.* Such proceedings have been held to be rehabilitative rather than penal. *In re State in the Interest of Carlo,* 48 *N. J.* 224 (1966) ; *N. J. S.* 2A :4–2. The rules of evidence do not apply to the same extent as in ordinary criminal cases. See Annotation, "Applicability of rules of evidence in juvenile delinquency proceeding," 43 *A. L. R.* 2d 1128 (1955). The full complement of constitutional rights does not attach. *Kent v. United States,* 383 *U. S.* 541, 86 *S. Ct.* 1045, 16 *L. Ed.* 2d 84 (1966) ; *In re State in the Interest of Carlo, supra, pp.* 234–35; *Ex parte Newkosky,* 94 *N. J. L.* 314, 316–17 (*Sup. Ct.* 1920).

However, in *In re Gault,* 387 *U. S.* 1, 87 *S. Ct.* 1428, 18 *L. Ed.* 2d 527 (1967) it was held that proceedings in the Juvenile Court were subject to the constitutional requirement of due process of law. And in *In re State in the Interest of Carlo, supra,* a juvenile was held entitled to the constitutional safeguard of voluntariness in connection with the use of his alleged confession. Further, in *State in the Interest of L. B. (J. & D. R. Ct.* 1968) it was held that a motion to suppress evidence obtained by an unlawful search and seizure was cognizable in the Juvenile and Domestic Relations Court.

There can be no doubt as to the right to cross-examine witnesses in a proceeding in the Juvenile Court.

*In re Gault, supra,* 387 *U. S.* at *page* 57, 87 *S. Ct.* 1428. We perceive no reason why the procedural tool of sequestration, which is calculated to prevent witnesses from being "educated" by the testimony of the witnesses who precede them, should not likewise be available to juvenile defendants. Wigmore. quoting the Bible story of Daniel's judgment in Susanna's case as one of its earliest applications, ranks it just below cross-examination as a device to expose untruthfulness. 6 *Wigmore, Evidence* (*3d ed.* 1940), § 1837 *et seq.* As far back as *State v. Zellers,* 7 *N. J. L.* 220, 226 (*Sup. Ct.* 1824), the then Chief Justice noted that:

"We have often made rules to that effect, to prevent their hearing what the other witnesses detail in their evidence, for the less a witness hears of another's testimony the more likely is he to declare his own knowledge simply and unbiassed."

Generally, the granting or denial of a motion for sequestration *is a matter calling for* the exercise of the court's sound discretion, having in mind the circumstances of the particular case. *State v. Williams,* 29 *N. J.* 27, 46 (1959). Ordinarily, such a motion should be granted and its denial should be based upon sound reasons.

We can conceive of no reason which would have compelled exclusion of the two police officers. While they were *pro forma* complainants they had no personal knowledge of the commission of the offenses charged. As officers connected with the Youth Aid Bureau it was within the court's discretion to permit them to remain. *State v. Barts,* 132 *N. J. L.* 74, 83-84 (*Sup. Ct.* 1944), affirmed 132 *N. J. L.* 420 (*E. & A.* 1945). Likewise, no reason appears why James should have been excluded since he was the *sole* witness to the offense of January 20, 1967.

We are inclined to the view that the motion should have been granted as to William Chapman, Ronald Chapman and Nathaniel Johnson but conclude that appellant suffered no prejudice from the court's failure to do so. The key issue upon which the case rested was the identification of appel-

lant. There was no possibility that the testimony of one of them would have served to "educate" the others since two of them had seen appellant after the commission of the offenses and all had previously identified him at police headquarters. Our consideration of their testimony as revealed in the court's statement (and appellant's proposed statement as well) satisfies us that appellant suffered no harm from their simultaneous presence in the courtroom. *Cf. State v. DiModica*, 40 *N. J.* 404, 414 (1963).

Appellant next contends that the "statement of the evidence" permitted by *R. R.* 1:6-3 in the absence of a stenographic transcript inadequately preserves the record of the proceedings and thus denies him an effective appeal. He notes that in juvenile proceedings the prosecutor does not ordinarily appear and the examination of the juvenile is conducted by the judge. When no transcript is made and an appeal is taken, the appealing juvenile is placed in the position of having the record made up by the judge whose decision is under review. He argues that the lack of neutrality of the judge in such a situation compels a finding that the appellant is thus deprived of due process.

Initially, it is to be noted that counsel for the juvenile did submit to the trial judge a seven page (proposed) "statement of proceedings" and served a copy thereof on the county prosecutor. Since the prosecutor was not present at the hearing he was unable to concur in the statement or submit a counterstatement. The judge's "statement" appears to be more complete than the one prepared by appellant. It is not contended that they vary in any substantial degree. The single exception called to our attention is the trial judge's omission to refer to a second motion to sequester which is mentioned in appellant's proposed statement. This discrepancy poses no difficulty since it was conceded at the oral argument that two such motions were made, one at the beginning of the hearing and the other when the three complaining witnesses were brought into the hearing room together.

. Wholly aside, we conclude that the procedure for reconstruction of the record provided by *R. R.* 1:6–3 and followed here satisfies the essential elements of due process. *Cf. State v. Smith,* 84 *N. J. Super.* 452, 456–57 *(App. Div.* 1964), certification denied 43 *N. J.* 270 (1964). In its pertinent parts it requires that the appellant serve on the respondent his "statement of evidence" to which respondent is required to make objection or propose amendments within ten days after service. Thereupon the statement with the objections and proposed amendments is submitted to the court for settlement. If the record as certified by the court is conceived to be incorrect by a party, he may move to correct or modify it. *R. R.* 1:6–6; *Yoerg v. Northern New Jersey Mtg. Associates,* 44 *N. J. Super.* 286, 289 *(App. Div.* 1957); *State v. Zoppi,* 72 *N. J. Super.* 432, 435 *(App. Div.* 1962). Here, as noted, appellant submitted such a statement and, with the single exception noted above, its contents were substantially embodied in the statement certified by the court. There was thereafter neither objection nor any request for hearing on any alleged discrepancy or inaccuracy. Thus the statement was prepared with appellant's full participation.

Appellant's final contention is that the omission to require that in all cases a stenographer be present to record the testimony at a trial in the Juvenile Court deprived him, as an indigent juvenile, of the equal protection of the laws. He argues, in substance, that since *R. R.* 6:2–10 (then in effect) provided for the making of a stenographic record upon the order and at the expense of a party desiring the same, it was discriminatory as to those, like himself, who were unable to pay for such a transcript. Appellant cites no case in which a provision similar to the one referred to has been held to be constitutionally defective. He relies on *Griffin v. People of State of Illinois,* 351 *U. S.* 12, 76 *S. Ct.* 585, 100 *L. Ed.* 891 (1956) and cases which have followed it such as *Eskridge v. Washington State Board,* 357 *U. S.* 214, 78 *S. Ct.* 1061, 2 *L. Ed. 2d* 1269 (1958); *Burns v. State of Ohio,* 360 *U. S.* 252, 79 *S. Ct.* 1164, 3 *L. Ed. 2d* 1209 (1959); *Draper*

*v. State of Washington,* 372 *U. S.* 487, 83 *S. Ct.* 774, 9 *L. Ed.* 2*d* 899 (1963) and *State v. Welch,* 46 *N. J.* 57 (1965).

We find none of the cited cases to be apposite. *Griffin* holds that where a stenographic transcript is a prerequisite to full appellate review of his case and such a transcript has been made below, the denial of a free copy thereof to an indigent defendant violates the due process and equal protection clauses of the Fourteenth Amendment. *State v. Welch, supra,* which followed *Griffin,* held that where the original appeal had been dismissed for defendant's failure, by reason of his indigency, to order and file a transcript, and such transcript was no longer available, defendant was entitled to a new trial.

■ We therefore hold that the omission to provide for a stenographic transcript of the hearing did not amount to a deprivation by appellant of the equal protection of the laws. We note that following the filing of the present appeal *R. R.* 6:2–10 was amended, effective September 11, 1967, to provide, with certain exceptions not here relevant, for the verbatim recording of hearings and trials in Juvenile and Domestic Relations Courts.

The judgment is affirmed.