522 F.Supp. 1138 (1981)
Elizabeth P. SHAFFER, William W. Shaffer, Daniel Everett Brangard, Aura Virginia Engle, Gary N. Cottrell, Susan Rae Moore, minors by their guardians, Betty J. Shaffer, Wanda R. Brangard, Pauline V. Layhew, Dolores Cottrell and Diana J. Moore, and in their own right, Plaintiffs,
v.
BOARD OF SCHOOL DIRECTORS OF the ALBERT GALLATIN AREA SCHOOL DISTRICT, Dorsey Clegg, Theodore Yankowski, Sarah Bartuch, Elroy Enlow, Charles King, John A. Kupas, Jr., George E. Lilly, Theodore G. Shaffer, Frank Sterle, individually and in their capacity as members of the Board of School Directors of the Albert Gallatin Area School District, Fayette County, Pa., and Michael E. Tippet, individually and in his capacity as Superintendent of the Albert Gallatin Area School District, Defendants.
Civ. A. No. 80-1115.
United States District Court, W. D. Pennsylvania.
September 29, 1981.
*1139 Robert M. Brenner, Donald Gary Keyser, and David W. Pickens, Uniontown, Pa., for plaintiffs.
Gerald R. Solomon, Uniontown, Pa., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
SIMMONS, District Judge.

Findings of Fact
The Plaintiff, having filed its Complaint herein on August 7, 1980, alleging violations of the Plaintiffs' constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983, and seeking declaratory and injunctive relief; and Defendant, having appeared; and the Court having issued a preliminary injunction on March 11, 1981, of which findings of fact are incorporated herein and made a part hereof by reference; and the Court having heard additional testimony on the merits of a permanent injunction on June 3, 1981; and the Court having considered the matter and been duly advised, the Court makes the following findings of fact:
1) The Defendant Board of School Directors has, pursuant to State Statute 24 P.S. § 1 et seq., established kindergarten for all eligible school children in the school district.
*1140 2) At the beginning of the 1980-81 academic year, Defendant School District provided bus transportation for kindergarten students either to school for the morning session or home from school from the afternoon session, but did not provide bus transportation from the morning session or to the afternoon session.
3) The Defendant Board of School Directors approved a budget for the 1980-81 academic year that included substantial funds to bus kindergarten students from their homes to the remote school locations and return for both the morning and afternoon sessions, and that money was available for providing such two-way roundtrip transportation.
4) Notwithstanding the allocation of such funds for roundtrip transportation of kindergarten students, the Defendant School Board, on July 17, 1980, indicated their intention not to utilize the allocated funds for roundtrip bussing and thus prevented their expenditure for that purpose.
5) Barbara Lindeman, who is a member of the class of plaintiffs, has an income of $290.00 for a family of three, which equals or is less than the family's expenses for the necessities of life, and has no income remaining to provide for the transportation of her daughter to kindergarten.
6) Diana Moore, who is a member of the class of plaintiffs, has an income of $630.65 per month for a family of five, which is less than or equals the family's expenses for the necessities of life, and has no income remaining to provide for the transportation of her daughter to kindergarten.
7) Margaret Walkos, who is a member of the class of plaintiffs, has an income of $405.00 per month for a family of five, which equals or is less than the family's expenses for the necessities of life and has no income remaining and, unless her situation changes, will have no income available to provide for the transportation of her daughter to kindergarten in the 1981-82 academic year.
8) Diana Moore, Barbara Lindeman and Margaret Walkos and their families, all live between five and six miles from the school building where their children would attend kindergarten and would not be able to walk to the school throughout the school year without endangering the well-being of their children.
9) As a result of the refusal of the Defendant Board of School Directors to utilize allocated funds to provide roundtrip bus transportation for kindergarten children, the named and unnamed plaintiffs have been and shall be effectively precluded from attending kindergarten since the plaintiffs cannot provide an alternate means of transportation to and from the schools.
10) The children of Diana Moore, Barbara Lindeman and Margaret Walkos participated in home bound Head Start programs for two years prior to being eligible for kindergarten.
11) A Head Start program has positive social and intellectual benefits and starts a child on his educational experience.
12) The interruption of one year between a limited home bound Head Start experience and the First Grade would be harmful to the essential continuity of a child's development.
13) Children who have had kindergarten need less special education, participate in fewer remedial classes, continue in school longer, perform better on achievement tests and progress more rapidly than those who have not had kindergarten.
14) The kindergarten experience involves the use of many and various teaching aids including games, puzzles, blocks, clay, crayons, records and cassettes which the named and unnamed Plaintiffs are not in a position to provide for their children at home in sufficient numbers to satisfy the requirements of kindergarten.
15) Those children who, because of their financial ability to attend kindergarten, have a greater advantage than those who, because of their lack of financial ability, are not able to attend kindergarten.
16) Kindergarten is an essential element of a thorough and efficient system of public education.
*1141 17) That the named Plaintiffs' families represent the class of all past, present and future kindergarten-age children and the parents of said children within the Albert Gallatin Area School District who cannot afford finances to provide transportation for their children to or from kindergarten pursuant to Federal Rules of Civil Procedure 23(a), (b)(1) and (b)(2), as stipulated to by the parties, and the Defendants have failed to act on grounds generally applicable to the class.

CONCLUSIONS OF LAW AND DISCUSSION
For the reasons stated below, the Court concludes that the Plaintiffs and the class they represent are subject to policies and practices of Defendant School Board that deny them their right to due process and equal protection of the law as guaranteed them by the Fifth and Fourteenth Amendments to the Constitution of the United States.

A. PLAINTIFFS' RIGHT TO DUE PROCESS OF LAW
It is well settled that systems and procedures established by governmental entities which impact upon significant rights and interests of citizens must be so structured as to insure that due process of law is accorded such citizens in any action taken affecting such rights and interests.
The category of rights and interests to which such due process guarantees must be accorded is not limited to those fundamental rights set forth in the Constitution. Courts have recognized in a variety of situations the attachments of such guarantees to actions involving state-created rights. See Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (provision of free transcripts for indigent criminal appellants) and Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959) (provision of second, final tier of appeals to indigent criminal defendants without payment of costs).
Indeed, in their consideration of those situations which require such guarantees, Courts have been concerned not only with the significance of the right involved, but also with the necessity for insuring that governmental involvement in and regulation and restriction of the rights and interests of citizens is carried out in conformity with standards of due process of law. As the Court in Homer v. Richmond, 292 F.2d 719, 722 (D.C.Cir., 1961) stated:
One may not have a constitutional right to go to Baghdad, but the government may not prohibit one from going unless by means consonant with due process of law.
Clearly, not every action of a government entity which may touch upon the rights or interests of citizens is subject to such due process protection. There are, however, certain basic governmental powers affecting those rights that have traditionally been recognized as requiring the guarantee of due process in their application. One fundamental aspect of such exercise of power relates to access: access to rights granted to citizens by action of law, regulation or governmental policy. Governmental entities cannot establish systems or procedures which, by design or application, arbitrarily preclude access of citizens to the enjoyment of rights to which they would otherwise be entitled.
A significant case in which such principle was enunciated by the Supreme Court, one which has substantial relevance to the instant case in that Plaintiffs there were as here, indigent citizens seeking access to enjoyments of rights established by a governmental entity, is Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). The right such Plaintiffs were being denied in Boddie was access to the state courts for the purpose of filing for an action in divorce. In that case, the Court ruled that the filing fees required as a necessary condition to the maintenance of such action improperly barred indigent individuals who lacked adequate funds to pay such fees from access to such court system, violating the rights of Plaintiff to due process of law *1142 by arbitrarily excluding them on the basis of their poverty.
Similarly, low income individuals have been determined to have their due process rights violated by a system established for appeals of lower court decisions which required appellants to pay for the costs of materials (transcripts) necessary to further such appeal. Griffin v. Illinois, supra. Even in cases where the rights are extremely limited in nature, the courts have determined that governmental action affecting those rights must comport with requirements of due process: Winsett v. McGinnis, 617 F.2d 996 (3rd Cir. 1980) (access to work release program). Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (inmates' interest in "good time" credit).
In the instant case, Plaintiff adults maintaining this action as guardians on behalf of their minor children, seek protection of the rights and interests of such children, and others similarly situated, to attend kindergarten. Clearly the interest which Plaintiffs seek to protect is of an important and fundamental nature. As the Supreme Court states in their landmark decision, Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954):
"education is perhaps the most important function of state government."
Indeed, a child's interest in educational opportunity has been recognized as the equivalent of a property interest, and a proper object of due process protection. Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). As stated in Graham v. Knutzen,
"whether attendance at a public school be characterized as a `right' or a `privilege', it cannot be disputed that it is of value to the student and deserving of constitutional protection." 351 F.Supp. 642 at 664 (D.C.Neb., 1973).
The Constitution of the Commonwealth of Pennsylvania recognizes the great importance of education in its mandate to establish a "thorough and efficient" school system. Art. 3, Sec. 15. Further, the state legislature has provided in 24 P.S. § 5-503, that "kindergartens shall be an integral part of the elementary school system..." Plaintiffs aver that their children and the children of other indigent parents, are deprived of their rights to participate in an established kindergarten program by Defendants' failure to provide for transportation of these students to and from their homes.
Defendants, because of their failure to approve the expenditure of budgeted transportation funds, are providing only one-way transportation for kindergarten students. Obviously, if a parent simply cannot afford to get the children to school in the first place, the availability of return transportation is irrelevant. Likewise, such parents cannot reasonably and safely send their four to six year old children to school at a distance of two or more miles from their home if the childrens' means of return is consistently uncertain. The practical result is that these children are effectively precluded from attendance at kindergarten. The arbitrary system established by Defendants providing only one-way transportation constitutes an impermissible barrier to access of such children of low income individuals to enjoyment of the right to secure such educational opportunity, otherwise available to students not arbitrarily and adversely affected by such system. Such interference with enjoyment of this right by the school board under color of state law, violates Plaintiffs' rights to due process, pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the Constitution of the United States.

B. PLAINTIFFS' RIGHT TO EQUAL PROTECTION OF THE LAW
Where, as in the instant case, the rights claimed to have been infringed under color of state law are of a fundamental nature, and the individuals claimed to have been denied those rights are members of a class against whom such state action appears to have been selectively prejudicial in its affect, the law in a number of situations has recognized that such action violates the rights of such individuals comprising the *1143 class to the equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States.
In order for governmental action to be found violative of equal protection, it is not necessary that there be acts which establish an obstacle to the exercise of such right, as was the case in Brown, supra, and other cases where state action was struck down on equal protection grounds: Harper v. Virginia Bd. of Elec., 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); In re Distribution of Books and Materials to Under Privileged Students in the State of West Virginia, 6-17-77 (M.D.L. Docket No. 280). For, in addition, omission of necessary action to protect such rights has also been deemed sufficient to constitute grounds for finding of such violation. (See Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967)).
Pursuant to traditional criteria for analyzing the applicability of the Equal Protection Clause guarantee to the facts and circumstances evidenced in a particular case, it is necessary to examine the significance of the right adversely affected; to identify the basis upon which the particular class of citizens has been selectively prejudiced by such action; and then to assess the sufficiency of the Defendants' rationale in justifying such inequality.

1. Significance of Right Adversely Affected

With respect to the significance of the right at issue, the Courts have left little doubt as to their weighing of the importance of education:
In these days, it is doubtful that any child may reasonably be expected to succeed if he is denied the opportunity of an education. Brown, supra 347 U.S. at 493, 74 S.Ct. at 691.
Nor is there any less specificity with respect to the necessity for insuring equal opportunity to enjoyment of such interest:
Such an opportunity where the state has undertaken to provide it, is a right which must be made available to all on equal terms. Brown, supra at 493, 74 S.Ct. at 691.
Indeed, the right to equal opportunity to education has been recognized as guaranteed by the Equal Protection Clause of the Fourteenth Amendment:
... equal access to education is a right guaranteed by the Equal Protection clause of the Fourteenth Amendment to the Constitution where a state has created a right to a free education by its own constitution and laws. In re Distribution, supra. See also Natonabah v. Board of Ed. of Gallup-McKinely Cty. Sch. Dist., 355 F.Supp. 716 (D.C.N.M., 1973) and Bichrest v. School District of Philadelphia, 346 F.Supp. 249 (D.C.Pa., 1972).

2. Nature of Class Discriminated Against

Given the uncontroverted determination of the Courts to protect such rights to equal educational opportunity from state actions or omissions which might establish such inequality, the second consideration to be examined is the particular basis upon which Plaintiffs as a class have been denied such equal opportunity, for the basis of such discrimination is relevant in determining the legal sufficiency of the rationale upon which the action effecting such denial is predicated. In the instant case, it is the element of Plaintiffs' indigency which is responsible for the discriminatory impact of Defendants' system of transporting kindergarten children to school. In its consideration of wealth as a basis for state action that may have a discriminatory impact upon the indigent, the Supreme Court, in a case involving a similar policy of depriving indigent citizens of the equal protection of the law, stated:
... lines drawn on the basis of wealth or property render a classification highly suspect and thereby demand a more exacting judicial scrutiny. Harper v. Virginia Bd. of Elec., supra.

In that case, the Court held that Virginia's $1.50 poll tax as "a prerequisite of voting" was "an `invidious' discrimination." The Court continued that "the right to vote in state elections is nowhere expressly mentioned" *1144 in the Constitution, but "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with" equal protection, which is violated when a state "makes the affluence of the voter or payment of any fee an electoral standard." The same general considerations were also apparent in Griffin v. Illinois, supra, where the Court indicated that even state-created rights which are not specifically guaranteed by the Constitution cannot be denied because of lack of wealth on the part of "victims." Hence, state action which discriminates on the basis of wealth is "highly suspect," and requires a substantial justification by the governmental entity affecting such discrimination to avoid being deemed violative of the Equal Protection clause.

3. Assessment of Legal Sufficiency of Defendants' Basis for Such Discrimination

Having determined that the right at issue in the instant case has been recognized by the Supreme Court and other federal courts throughout the system as extremely significant, and having concluded that the Supreme Court and other federal courts have viewed classifications effecting discriminatory impact of state action on indigent individuals as "highly suspect," it is then necessary to examine the adequacy of Defendants' rationale for permitting such deprivation of Plaintiffs' right as a class.
In seeking an appropriate criteria to test the sufficiency of such rationale, the Supreme Court's standard, as enunciated in Harper, supra, quoted above seem appropriate:
... lines drawn on the basis of wealth or property render a classification highly suspect and thereby demand a more exacting judicial scrutiny. Harper v. Virginia Bd. of Education, supra.

Indeed, a recent Federal Court decision in an analogous case echoes the same "exacting" test requirement as articulated in Harper:
Denial of any right on the basis of wealth is always potentially invidious and must be examined carefully. In re Distribution, supra.

A brief examination of the facts and circumstances involved in the case quoted above, and articulation of the basis for the Court's decision in that case is relevant to the instant case, given the similarities in both cases as to the issues involved.
In In re Distribution, indigent public school children were being deprived of necessary books, workbooks, and other educational materials due to the failure of the state legislature to approve funding for these materials.
In attempting to balance the interests involved, the Court in that case found that, as in the instant case, the relevant state interest was financial, and that the Defendant's apparent attempt to place that financial burden on the indigent parents was indefensible:
Surely no legitimate state purpose is served by the deprivation of the very basic tools of education to the state's indigent children. If the purpose of the state's policy is to conserve public funds, that policy places the burden of providing textbooks and other educational materials upon the parents of needy children. However, it is the children and not the parents who suffer the deprivation. The rational remedy for failure to provide children with books would lie against the parents. Yet it has been held that taking action against persons who cannot afford to pay is futile, and the discrimination between indigents and other persons is not only of questionable rationality but fails to serve the state purpose. See Tate v. Short, 401 U.S. 395, 91 S.Ct. 668 [28 L.Ed.2d 130] (1971) in which a denial of equal protection, based upon the rational relationship test outlined above, was found. In that case the jailing of an indigent person for an offense which only provided for a fine was found not justifiable in the advancement of a legitimate state purpose since it did not aid in the collection of the fine. (See also Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). In re Distribution, supra at 9.
*1145 In its decision, the Court determined that the School Board in establishing a policy that effectively precluded indigent children from enjoying their right to education, was violating the rights of such citizens to equal protection of the laws, as guaranteed by the Fourteenth Amendment:
In the case before us it is clear that to deprive poor children of access to education not only serves no legitimate state purpose by the analysis outlined above, but further actively defeats the equalizing principles which are the foundation of a public school system and in fact of democratic government. In Re Distribution supra, at 10.
The Court ordered the State Superintendent of Schools and the County Boards involved to commence providing such materials so as to redress such inequality.
In the instant case, a quite similar set of circumstances as those which appeared in In re Distribution are set before this Court for its consideration.
At issue in both cases is the question of who shall provide the "means" necessary for enjoyment of Plaintiffs' children's rights to education. In In re Distribution, those "means" were the textbooks to be utilized by the school and children in the educational process. In the instant case, the means are, if anything, more fundamental: transportation necessary to gain physical access to the educational process itself.
With respect to the assessment of the legitimacy of the governmental entity's purpose in placing the cost of providing such "means" to education upon the indigent parents of these children, the same consideration which moved the Court in In re Distribution to strike down such scheme as unconstitutional applies equally in the instant case. The same "futility" in effecting the shift in assuming such burden, articulated by the Supreme Court in Tate, supra, and cited in In re Distribution applies to Defendants' requirement that indigent Plaintiffs, subsisting on a minimal public assistance allowance, should bear the costs of one-way transportation of their children to kindergarten. Moreover, the same cruel irony noted in In re Distribution  that the immediate "victims" of such a scheme are not the parents upon whom such burden is placed, but their children who are deprived by reason of the poverty of their parentscharacterizes the transportation system devised by Defendants in the instant case.
Given such analysis, Defendants' placement of the financial burden associated with transportation of these kindergarten children upon those unable to meet such obligation and the resulting deprivation of Plaintiff children's opportunity to attend kindergarten because of their parent's indigency, constitutes a system that is unsupportably related to any legitimate state purpose and inconsistent with the Commonwealth's purpose of providing a "thorough and efficient" school system. Pa.Const. Art. 3, Sec. 5.
Absent such legitimate state interest of such compelling nature as to justify the inequality in educational opportunity metered out to poor children of kindergarten age residing in the Albert Gallatin Area School District, such inadequate one-way busing system constitutes state action violative of Plaintiffs' right to equal protection of the law, as guaranteed by the Fourteenth Amendment to the United States Constitution.
For the foregoing reasons and based upon the foregoing findings of fact and conclusions of law, IT IS THEREFORE THIS COURT's CONCLUSION, that 24 P.S. § 13-1361, should be read to mean that where a school district provides bus transportation for kindergarten children, it must provide bus transportation to each eligible child both to and from each kindergarten session during the school year, thereby allowing appropriate injunctive and declaratory relief with respect to the class as a whole.
This Court concludes that it has jurisdiction of the subject matter of this action and of the parties hereto. The Complaint states claims for relief against Defendant under 42 U.S.C. § 1983, with jurisdiction under 28 U.S.C. § 1343.

*1146 ORDER
AND NOW, this 29th day of September, 1981, this Court ORDERS and DECREES the following:
1. This Court hereby defines and certifies this matter as a class action and hereby defines the membership of the Plaintiff class, both named and unnamed, as being all past, present and future kindergarten age children, and the parents of said children residing within the Albert Gallatin Area School District who cannot afford financially to provide transportation for said children to or from kindergarten at any time present and/or future time, as is now the case, when the said School District will provide willingly, only one-way transportation for said children class members to or from kindergarten each regularly scheduled school day. This class is certified pursuant to Federal Rules of Civil Procedure 23(a), (b)(1) and (b)(2), as stipulated to by the parties to this litigation.
IT IS FURTHER ORDERED, that the Defendants are hereby permanently enjoined and restrained from failing to provide transportation to all of the eligible children in the Plaintiff class, residing in Defendant's School District, to and from kindergarten beginning with the fall term of the 1981-82 school year, and as long as a kindergarten education is provided to the children of said Defendant School District; said Order to be implemented in the following manner:
a) The Defendant shall be required to give effective notice of the availability of two-way busing for kindergarten children to all families within the School District with children of kindergarten age. Such notice shall state that this policy is effective commencing with the 1981-82 school year, and that it is a change from the prior policy. Such notice shall request and invite parents of children of kindergarten age residing in such district to contact the school district's administrative office by phone or in person to arrange for establishing transportation of the children to and from the school. Such notice shall be disseminated in the following manner:
1) For a period of four weeks preceding the beginning of the 1981-82 school year, the notice will be published once each week in the Uniontown Morning Herald, the Uniontown Evening Standard, the Morgantown Dominion-Post and the Masontown Sentinel.
2) Concurrently with the four week period described in the foregoing paragraph of this Order, said notice shall be broadcast frequently each week on radio stations WMBS Uniontown; WPOR-FM Uniontown; WASP Brownsville; WAJR Morgantown and WXLG Morgantown.
b) The Defendant School District, commencing with the 1981-82 school year and continuing thereafter, shall make available two-way busing to all eligible kindergarten students throughout each academic year and each succeeding academic year as long as a kindergarten education is provided for its students.
For the purpose of insuring compliance with this Order, Counsel for Plaintiffs will be permitted access to inspect the files showing that notice was given in compliance with this Order, said inspection to occur in the month of October, 1981, during reasonable business hours.
Jurisdiction is retained by this Court for the purpose of enabling either party to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Order, for the modification or termination of any of the provisions herein, and for the enforcement of compliance therewith and the punishment of violations thereof.
The provisions of the Order shall apply to the Defendants, their agents, servants, employees, attorneys, successors and assigns, and to all persons in active concert and participation with Defendants who received actual notice of this Final Order by personal service or otherwise.