**Robert W. L. JONES, D.D.S., Plaintiff,**

v.

**STATE OF MICHIGAN and Michigan State Board of Dentistry, Defendants.**

No. 80–40068.

United States District Court,
E. D. Michigan, S. D.

Oct. 27, 1981.

---

Peter Sloan, Owosso, Mich., for plaintiff.

Howard C. Marderosian, Lansing, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

### I FACTS

This action arose out of an Order entered on April 1, 1977, by the Michigan Board of

Dentistry (hereinafter defendant). The Order, which was to take effect on June 1, 1977, provided that the dentist license of Robert W. L. Jones, (hereinafter plaintiff) was to be suspended for six months.

Plaintiff's license was suspended because he had allowed an unlicensed individual to clean the teeth of a patient. The State Board of Dentistry determined that this was a violation of the Dentistry Act, and hence plaintiff was punished by the six-month suspension.

Plaintiff has brought an action under 42 U.S.C. § 1983 seeking $100,000 in damages and an order vacating the Board of Dentistry's suspension order. Plaintiff bases the action on an "equal protection" clause theory. Plaintiff points out that a person aggrieved by an order of the Board of Dentistry does not enjoy a right to appeal. Such a person is limited under the Dentistry Act, to seeking leave to appeal from the Michigan Supreme Court.[1] This contrasts with the appeal by right that is set out in most of the other statutes that establish and regulate the administrative agencies that are responsible for overseeing the health oriented occupations. This differential treatment is, according to plaintiff, a violation of the equal protection clause.

On May 21, 1980, plaintiff and defendant entered into a stipulation providing that plaintiff's license will remain in effect "until further ordered by the court." This apparently means that the license suspension will be held in abeyance until this Court renders a decision on plaintiff's § 1983 action. Meanwhile, defendant has filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This of course means that defendant believes that taking the facts as alleged by plaintiff to be true, plaintiff has still failed to state a claim upon which relief can be granted.[2] The Rule 12(b)(6) motion is based on two

theories: First, defendant argues that it is—as a state agency—immune from the present action. Alternatively, defendant contends that plaintiff has not stated an equal protection clause claim, and is then not entitled to relief. This Court will now consider the Motion to Dismiss.

## II IMMUNITY ANALYSIS

The threshold issue in the instant case is that of immunity. In the next section of this Opinion, the Court will address the equal protection clause issue that lies at the heart of plaintiff's § 1983 claim. This Court recognizes, however, that the federal judiciary is not in the business of giving advisory opinions.[3] It is therefore essential that this Court first demonstrate why defendant is not entirely immune from this action. Once this is accomplished, the equal protection clause issue will be considered.

Defendant's immunity theory supposedly is based on the interpretation of the Eleventh Amendment rendered by the Supreme Court in *Edelman v. Jordan*.[4] This Court readily acknowledges that *Jordan* is of enormous importance in modern constitutional law. Nevertheless, it is clear that defendant has overextended the *Jordan* rule. *Jordan* tested the constitutionality of retroactive damages that were to be paid out of the Illinois state treasury. The Court held that the Eleventh Amendment prohibited such awards.[5] Thus, *Jordan* stands for proposition that a plaintiff cannot collect damages from the state treasury. This rule obviously has wide ranging practical ramifications. It effectively bars money damage actions aimed at state agencies. Even when such actions are directed against the officials of the state agencies, *Jordan* operates to preclude money recoveries from state revenues.

The only exception to this rule is in the event Congress has enacted a statute intended to abrogate the Eleventh Amend-

---

1. *See*, M.C.L.A. § 338.219(5) (1976).

2. *See*, Wright and Miller, *Federal Practice and Procedure* § 1357.

3. *See, Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

4. 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

5. *See*, 415 U.S. 651, 655, 94 S.Ct. 1347, 1352, 39 L.Ed.2d 662.

ment pursuant to Congress' authority to enforce a Constitutional amendment. In *Fitzpatrick v. Bitzer*,[6] the Court applied this theory to uphold Title VII money damage liability for state employers that engage in prohibited employment discrimination. Similarly, in *Hutto v. Finney*,[7] the Court used this theory to uphold the 42 U.S.C., § 1988 attorneys fees provision as applied to the state treasury. Nevertheless, *Jordan* held that § 1983 was *not* intended by Congress to abrogate the Eleventh Amendment immunity. Therefore *Jordan* remains as the Supreme Court's classic statement that § 1983 money damage actions are prohibited where the recovery would come out of the state treasury.

■ In the instant case, plaintiff seeks $100,000 in damages as well as an order vacating the suspension order issued by the Board of Dentistry. In light of the foregoing discussion, this Court hereby holds that the Board of Dentistry—as a state agency—is immune from the $100,000 damages claim. Consequently, plaintiff's demand for $100,000 in damages is hereby stricken from his Complaint as unauthorized by law.

■ Next, this Court will consider whether the demand for injunctive relief must also be stricken. The answer quite clearly is "no"—an answer that is readily discernible from a reading of *Jordan*. Contrary to the viewpoint of defendant, *Jordan* was not meant to establish absolute immunity from all liability. Indeed the Court— speaking through Justice Rehnquist—took care to indicate that the Eleventh Amendment does not prevent a court from issuing an order or injunction that restricts a state agency from engaging in prospective unconstitutional behavior.[8] This Court therefore, rejects the part of defendant's Rule 12(b)(6) Motion that is based on the theory that defendant is immune from an order

permanently vacating the suspension order issued by the Board of Dentistry. With this ruling, it is established that the *Jordan* immunity does not apply to all aspects of the Complaint. It is thus appropriate for this Court to consider the equal protection clause issue raised by plaintiff's Complaint.

## III  EQUAL PROTECTION ANALYSIS

Plaintiff contends that the structure of appeal from a Board of Dentistry decision operates to deny dentists the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. Specifically, plaintiff points out that the decisions of the Board of Dentistry are appealable by leave only. This, of course, is in contrast with the appeal by right that is available with respect to the decisions of many of the other agencies that regulate the various health occupations.[9] This distinction—this comparative lack of appeal availability—is, according to plaintiff, enough to raise an equal protection claim.

Plaintiff subdivides his equal protection clause argument into two parts: First, plaintiff argues that the equal protection clause is violated because the Board of Dentistry statute is underinclusive. The statute denies a benefit to dentists that is enjoyed by other members of the various health occupation. It follows, therefore, that dentists are treated differently than similarly situated people. Plaintiff opines that this condition of and by itself is unconstitutional.

■ This first argument of plaintiff must be rejected outright. Modern equal protection law clearly allows a state to treat similarly situated persons differently. As the Supreme Court pointed out in its famous *New Orleans v. Dukes*,[10] Opinion, a

---

**6.**  427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

**7.**  437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

**8.**  415 U.S. 667, 94 S.Ct. 1357.

**9.**  These health occupations include: surgery; optometry; medicine; osteopathy; podiatry; psychology; nursing; physical therapy; physician's assistants; and pharmacy. *See generally* M.C.L.A. § 338 (1976).

**10.**  *See*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

state may legislate in a piecemeal manner. This kind of legislation will often produce a grant or denial of benefits to similarly situated people.

It is interesting to note that plaintiff attempts to support his position by citing dicta from the 1918 case of *Haynes v. Lapeer Circuit Judge*.[11] And this Court will certainly argue that judges and commentators[12] from another era were wont to speak the language of the "similarly situated" doctrine. But today it is clear beyond doubt that a law need only have a rational basis in order to withstand a "similarly situated" equal protection clause challenge. The Board of Dentistry statute can be said to rest upon any one of a number of rational bases. The legislature may, for example, have decided to deny appeal as a matter of right in order to cut back on the potentially large number of appellants from the dentistry grievance procedure. Under the rational basis test, this administrative convenience argument will alone be sufficient to pass the rational basis test.

The closer question pertains to plaintiff's second equal protection clause theory. Here, plaintiff focusses on the fact that dentists are hampered by the Dentistry statute in their quest to perfect a successful appeal. Plaintiff argues that the clogging of the appellate process amounts to a violation of the equal protection clause.

The Supreme Court has held that certain aspects of the appellate procedure are encompassed within a fundamental constitutional right. Before delineating what these aspects are, it would behoove this Court to briefly describe the constitutional significance of a *fundamental* right. In the last three decades, the Court has earmarked a set of personal rights as "fundamental rights." These include: the right of personal privacy;[13] the right to vote;[14] the right to travel;[15] and the right of meaningful access to judicial procedure.[16] State action cannot abridge a fundamental right unless the abridgement is necessary to fulfill a compelling state interest.[17] The compelling state interest test, as Professor Perry has pointed out, is nearly impossible to satisfy.[18] It is, therefore, rather obvious that state laws impairing *fundamental* rights have little—if any—chance of surviving equal protection clause scrutiny.

The Supreme Court, as was mentioned, has held that access to judicial process is a fundamental right. Typically, the decisions in this area involve filing and other expenses that operate to discriminate against the poor. One such decision was *Griffin v. Illinois*,[19] where the Court confronted the problem of discrimination against the poor in the appellate process. The Court recognized that indigents often cannot afford to purchase a copy of their trial transcripts, and are thus handicapped in their appellate efforts. In an opinion written by Justice Black, the Court held that the equal protection clause requires that indigents be provided with a free copy of their trial transcripts. The opinion contained strong language establishing that indigents could not be economically foreclosed from pursuing an appeal that the state had granted

11. 201 Mich. 138, 166 N.W. 938 (1918).

12. *See e. g.*, Tussman and Tenbrock, *The Equal Protection of the Laws*, 37 California L.Rev. 341 (1949).

13. *See e. g.*, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). The best known modern right to privacy case is, of course, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

14. *See e. g.*, *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).

15. *See e. g.*, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

16. *See e. g.*, *Burns v. Ohio*, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959).

17. *See Loving v. Virginia*, 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967).

18. *See* Perry, *Modern Equal Protection: A Conceptualization and An Appraisal*, 79 Columbia L Rev. 1023, 1033 (1979).

19. 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

them.[20] The opinion also, however, contained strong language establishing that the grant of a right to appeal was not at all required by the Constitution. As Justice Black pointed out: "It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all." [21]

█ *Griffin* sets out a rule that to this day is still sound constitutional law. A state is not required to provide appellate review. If, however, the state does choose to provide such review to a given class of litigants, the state cannot enact measures that arbitrarily deny effective appellate review to any particular subclass of the class of litigants. Indeed, the fundamental right of appeal, when denied, has almost always been denied by way of economic discrimination.[22] Plaintiff would be hard put to supply cases that invoked appellate discrimination based on factors other than economics. Nevertheless, the rule of the *Griffin* line of cases can be stated to embrace any type of discrimination that denies an effective appeal to a person to whom the right of appeal has *already been granted.*

█ In applying the *Griffin* rule to the instant case, this court is convinced that plaintiff was not denied his fundamental right to judicial access. This conclusion is compelled by the fact that the state of Michigan chose not to grant the right of appeal to plaintiff. In making this decision, the state simply was not acting in an unconstitutional manner. This rule has been well settled since Justice Black's *Griffin* remark some twenty five years ago.

Plaintiff argues that his position is bolstered by the Supreme Court case of *Lindsey v. Normet.*[23] This Court disagrees.

*Lindsey* invoked the constitutionality of the Oregon state forcible entry and wrongful detainer statute. This statute required an evicted tenant appealing an adverse trial court decision to post bond for twice the amount of the costs expected to accrue pending the appellate decision. The statute was found to violate the fundamental right of judicial *access.*[24] Obviously, *Lindsey* easily fits within the *Griffin* line of cases involving appellants discriminated against because of poverty. But more importantly for the present analysis is that *Lindsey* invoked the impediment of an appellate right that had already been granted. Indeed, the Court emphasized that Oregon statutes grant litigants the right to appeal with a surety requirement of nothing more than damages, costs and disbursements. This right was abridged by the wrongful detainer statute.

This Court believes that the instant fact pattern is far removed from *Lindsey.* Michigan administrative rulings are not the subject of a general right to appeal as in the case of abuse trial court rulings in Oregon. This is proven by the fact that the Michigan Administrative Procedures Act (APA) provides that appeal from agency rulings can be regulated by statute.[25] The Michigan APA does provide a general appellate procedure but the APA explicitly provides that the procedure only takes effect when an administrative agency does not—in its statute—establish the manner of appeal.[26] Here, the state of Michigan did choose to set up an appellate procedure— appeal by leave only. Therefore, the Michigan APA has no effect on appeal from adverse decisions of the Board of Dentistry.

It is proper to emphasize that the distinction between the Board of Dentistry appel-

---

20. *Id.* at 18, 76 S.Ct. at 590.

21. *Id.*

22. *See e. g., Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1971); *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Burns v. Ohio*, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959).

23. 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

24. *Id.* at 76–78, 92 S.Ct. at 875–77.

25. M.C.L.A. § 24.302 (1976).

26. *See id.*

late procedures and the procedures of other health occupation administrative agencies are constitutionally insignificant. Contrary to the intimations of plaintiff, the state certainly did not accord any kind of general appellate right to the health oriented occupations. Each occupation has its own regulatory statute that provides an appellate procedure. That the Board of Dentistry statute does not provide the same appellate procedure as the other health occupational agencies is not enough to violate the fundamental right to judicial access.

Plaintiff's crucial error is that he has assumed that the Board of Dentistry must afford appellate procedures comparable to those afforded by the regulatory boards of similar occupations. If this were true, it would be exceedingly difficult for a state legislature to set out an appeal "by leave" procedure for an administrative agency, for before a legislature could do this, it would have to scrutinize the appeal procedures of other agencies in related fields. As this section of the opinion has attempted to demonstrate however, the equal protection clause imposes no such requirement on administrative agencies. Consequently, the Court hereby holds that the Board of Dentistry's appellate procedure is not violative of the equal protection clause. Therefore, plaintiff has not stated an equal protection clause claim in the instant case.

## IV SUMMARY AND ORDER

This Court has considered the Rule 12(b)(6) Motion filed by defendant. The Court has concluded that defendant is immune from a claim of money damages. Furthermore, this Court has concluded that plaintiff has failed to state a claim upon which relief can be granted with respect to his substantive equal protection clause claim. Therefore, defendant's Rule 12(b)(6) Motion is GRANTED.

IT IS SO ORDERED.