**John Peter BRADLEY, Plaintiff,**

v.

**NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, DIVISION OF MOTOR VEHICLES; Gary Ramsey, an individual; Joseph Austin, an individual; Ron Moore, an individual; Bobby Lee Medford, an individual; Lee Farnsworth, an individual; the Town of Woodfin, North Carolina; Homer Honeycutt, an individual;** **Leonard Clark, an individual; David Clark, an individual; Geneva Maney, an individual; Donald Honeycutt, Jr., an individual; Wanda Haynes, an individual; and Joseph Ferikes, an individual, Defendants.**

**No. CIV. 1:03CV73.**

United States District Court, W.D. North Carolina, Asheville Division.

Oct. 7, 2003.

Leon N. Patricios, Thomas G. Schultz, Ferrell Schultz Carter, Zumpano & Fertel, P.A., Miami, FL, Thomas C. Manning, Manning & Crouch, Raleigh, NC, for John Peter Bradley.

Hal F. Askins, Jeffrey R. Edwards, N.C. Dept. of Justice, Raleigh, NC, for North Carolina Dept. of Transp., Div. of Motor Vehicles, Ron Moore.

Robert B. Long, Jr., W. Scott Jones, Long, Parker & Warren, P.A., Asheville, NC, Hal F. Askins, Jeffrey R. Edwards, N.C. Dept. of Justice, Raleigh, NC, Michael W. Mitchell, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, for Gary Ramsey.

William A. Blancato, McCall, Doughton & Blancato, PLLC, Winston-Salem, NC, for Joseph Austin, Lee Farnsworth.

Edward L. Eatman, Jr., Hedrick, Eatman, Gardner & Kincheloe, Charlotte, NC, Anne-Charlotte Dowless, Gastonia, NC, for Town of Woodfin, Homer Honeycutt, Leonard Clark, David Clark, Geneva Maney, Donald Honeycutt, Jr., Wanda K. Haynes, Joseph Ferikes.

### *MEMORANDUM OF OPINION*

THORNBURG, District Judge.

THIS MATTER is before the Court on the following motions:

1. Motion of Defendant North Carolina Department of Transportation, Division of Motor Vehicles (DMV), to dismiss, filed August 26, 2002;

2. Motion of Defendant Captain J.S. Holland, in his official capacity as substituted for Captain Gary Ramsey in his official capacity, for partial dismissal, filed August 26, 2002;

3. Defendant Ron Moore's motion to dismiss, filed August 26, 2002; and

4. Motions of Defendants Bobby Lee Medford, Lee Farnsworth, and Joseph Austin [Buncombe County Defendants] to dismiss and for judgment on the pleadings, filed May 20, 2003.

Responses to these motions have been filed and they are now ripe for disposition.[1]

## I. PROCEDURAL HISTORY

On May 22, 2002, the Plaintiff filed a complaint in the United States District Court for the Eastern District of North Carolina against the 15 Defendants.[2] He

1. The Plaintiff has filed a motion for leave to file his response to the motions of Defendants Medford, *et al.*, out of time. The Court finds the Plaintiff has set forth good cause for the failure to file a timely response, there is no objection to the motion by defense counsel, and, therefore, the Court deems same to be timely filed.

2. The Defendant Buncombe County was dismissed by the Plaintiff on July 26, 2002, by way of voluntary dismissal.

asserts a myriad of claims in 13 separate counts against the Defendants pursuant to 42 U.S.C. §§ 1983, 1985, the North Carolina Constitution, violations of the Federal and State RICO statutes, wrongful discharge, intentional and negligent infliction of emotional distress, unlawful intrusion into private affairs, libel per se, and tortious interference with business relations.

On August 26, 2002, Defendants North Carolina Department of Transportation, Division of Motor Vehicles [DMV], J.S. Holland,[3] and Ron Moore filed motions to dismiss alleging Plaintiff's claims were barred by the Eleventh Amendment and sovereign immunity, and for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. On October 3, 2002, Plaintiff dismissed without prejudice "all state law claims against Defendants DMV (Counts III, X), J.S. Holland, in his official capacity (Counts III, X), and Ron Moore, in his official capacity (Counts XI, XIII)." Notice of Stipulation of Dismissal of State Law Claims Against Defendants DMV, J.S. Holland and Ron Moore Without Prejudice, filed October 3, 2002, at 2. The state law claims against Defendants Ron Moore and Gary Ramsey, in their individual capacities, were not affected by this dismissal. *Id.*

On motions by various Defendants, the action was transferred to this District. *See* Order, filed March 27, 2003 (Britt, J.).

## II. STATEMENT OF FACTS

The Plaintiff is a resident of Biltmore Forest, North Carolina, who has spent most of the past 24 years working in law enforcement. Complaint, ¶¶ 5, 31–109. The Plaintiff worked for the DMV from 1996 through 1999. *Id.*, ¶¶ 53, 67. During his tenure with the DMV, Plaintiff alleges

he witnessed widespread corruption in many forms; specifically, he and others were forced to contribute money to the Democratic party, he was forced to buy gifts for superiors, and he was instructed not to stop the trucks of certain companies that contributed to the Democratic party. *Id.*, ¶¶ 48–67. Because of this alleged corruption, the Plaintiff left the DMV in 1999. *Id.*, ¶ 67.

Nine months later, the Plaintiff attempted to return to work at the DMV. *Id.*, ¶ 68. When a supervisor told him that he would have to pay a bribe to be rehired, the Plaintiff reported the incident. *Id.* This report prompted an investigation by the North Carolina State Bureau of Investigation ("SBI"). *Id.*, ¶ 70. While the SBI was conducting its investigation, the Plaintiff received an anonymous letter ("the letter") in which the author threatened to reveal the Plaintiff's alternative sexual lifestyle if he continued to cooperate with the SBI. The Plaintiff alleges that it was Defendant Ramsey, his superior at the DMV, who wrote the letter. *Id.* The Plaintiff turned the letter over to the SBI and admitted that the allegations regarding his sexual habits were mostly true; he is a bisexual who engages in alternative sexual activity. *Id.*, ¶ 72. Plaintiff requested that the SBI keep the letter confidential and not release it even to local officials, including the Defendant Ron Moore. *Id.* The DMV subsequently denied Plaintiff re-employment, and he alleges that the denial was an attempt to retaliate against him for reporting the corruption. *Id.*, ¶ 77.

In the late summer of 2000, Plaintiff worked as a full time volunteer reserve officer for the Buncombe County Sheriff's Department. *Id.*, ¶ 78. In September, Defendant Farnsworth and another officer of the Sheriff's Department informed the

---

**3.** Defendant Holland was substituted in his official capacity for Gary Ramsey. *See* Defendant Holland's Partial Motion to Dismiss, filed August 26, 2002.

Plaintiff that he was being relieved of his duties as a volunteer reserve officer pursuant to orders from Defendant Sheriff Medford. *Id.*, ¶¶ 82–84. The Plaintiff alleges that the reason for his termination was that the SBI had given Defendant Moore a copy of the file that contained the anonymous letter and that Moore, in turn, had released the information to the Buncombe County Sheriff's Department. *Id.*, ¶¶ 187–88. The Plaintiff further alleges that Defendant Joseph Austin, a deputy sheriff with the Buncombe County Sheriff's Department and a former officer at the DMV, "worked to obtain the confidential, secret SBI report." *Id.*, ¶ 76.

In January 2002, the Plaintiff was hired as the new police chief for the town of Woodfin, North Carolina. *Id.*, ¶ 88. Plaintiff alleges that the Woodfin Mayor, Defendant Honeycutt, gave Plaintiff several improper orders and that he subsequently became aware of other corrupt behavior on the part of Honeycutt. *Id.*, ¶¶ 90–93. Plaintiff states he reported these alleged improprieties to the North Carolina Police Benevolent Association ("NCPBA"). *Id.*, ¶ 94. The NCPBA responded by sending a letter to the Woodfin Board of Aldermen on February 13, 2002, recommending the Board ask the SBI to investigate Honeycutt. *Id.*

The Plaintiff alleges that, around the same time, though possibly before Defendant Honeycutt knew that he had called the NCPBA, Honeycutt asked Moore to show him a copy of the SBI file that contained the letter. *Id.*, ¶ 95. The Plaintiff does not allege that Moore complied with Honeycutt's request; however, the Plaintiff does claim that Honeycutt, who was at that time an employee with the Sheriff's Department, obtained the file from the Sheriff's Department, which had obtained it from Moore more than a year earlier. *Id.*, ¶ 103, 190. Plaintiff further alleges that Defendant Honeycutt publicly

disclosed the file at a town meeting and that a local newspaper published the SBI's file and a version of the letter on February 19, 2002. *Id.*, ¶ 104.

On February 25, 2002, the Board of Aldermen fired the Plaintiff from his job as police chief. *Id.*, ¶ 109. Plaintiff alleges that, although the Board officially adopted Honeycutt's position that Bradley was insubordinate, refused to follow orders, and did not communicate with his superiors, the real reason for the Board's decision was that they disapproved of his lifestyle. *Id.*, ¶¶ 156, 160. However, the Plaintiff also alleges that "[t]he true reason that Pete Bradley was suspended and then fired … was that Pete Bradley stood up to Mayor Honeycutt." *Id.*, ¶ 159. It is the Plaintiff's allegation that the Woodfin Board of Aldermen used the letter and the information it provided about his lifestyle as justification for his termination, when in fact, the real basis for his termination was his refusal to participate in corruption. Plaintiff's Brief in Opposition to Defendants Medford, Farnsworth and Austin's Motion for Judgment on the Pleadings and Motion to Dismiss for Lack of Jurisdiction, filed June 23, 2003, ¶ 2.

## III. DISCUSSION

### A. Defendant DMV's motion to dismiss

On August 26, 2002, the DMV filed a motion to dismiss Plaintiff's claims brought pursuant to the North Carolina Constitution and 42 U.S.C. § 1983 for violation of his right to free speech and the claims for negligent infliction of emotional distress caused by the letter written by Defendant Ramsey as barred by the Eleventh Amendment and sovereign immunity. Further, the motion sought dismissal for lack of subject matter jurisdiction over the state law claims (Fed.R.Civ.P. 12(b)(1)), and for failure to state a claim upon which

relief could be granted (Fed.R.Civ.P. 12(b)(6)).

On October 3, 2002, Plaintiff filed a voluntary dismissal of the state law claims against the DMV, leaving only the § 1983 claim for violation of his free speech contained in Count I of the complaint. Plaintiff seeks injunctive relief to prevent DMV from engaging in further acts of discrimination or retaliation against him, to require the DMV to rehire him, and to remove from its files all records of adverse actions taken against him. The Plaintiff also seeks equitable relief in the form of back pay, interest, costs and attorneys' fees.

■ The DMV argues that Plaintiff's § 1983 claim is barred by the Eleventh Amendment. In general, states and their agencies are protected from § 1983 suits by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, suits for prospective injunctive relief, including reinstatement, from ongoing violations of federal law fall within an exception to the general rule and are not barred by the Eleventh Amendment. *Warnock v. Pecos County, Texas,* 88 F.3d 341, 343 (5th Cir.1996); *Will, supra,* at 71, n. 10, 109 S.Ct. 2304; *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Antrican v. Odom,* 290 F.3d 178, 184 (4th Cir.), *cert. denied,* 537 U.S. 973, 123 S.Ct. 467, 154 L.Ed.2d 329 (2002).[4] Plaintiff makes several demands for prospective injunctive relief an, injunction against discrimination and retaliation, an injunction requiring removal from the DMV's records of adverse actions against him, and request for reinstatement—and alleges that unless the DMV is so enjoined, it will continue to violate the First Amendment to the United States Constitution. Therefore, Plaintiff's demands for this prospective injunctive relief are not barred by the Eleventh Amendment.

■ Plaintiff's other remedies such as his request for interest, back pay, costs, and attorney fees, cannot be described as "prospective injunctive relief." The Supreme Court has held that the Eleventh Amendment does not prevent awards of costs and attorney fees against states in § 1983 actions. *Hutto v. Finney,* 437 U.S. 678, 695–98, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). As such, Plaintiff's claims for costs and attorney fees are not barred by the Eleventh Amendment.

■ In regard to Plaintiff's claims for back pay and interest, the Supreme Court has held that ordering a state retroactively to pay money that it should have previously paid a plaintiff was unconstitutional under the Eleventh Amendment because it amounted to awarding monetary damages against a state rather than awarding prospective injunctive relief. *Edelman v. Jordan,* 415 U.S. 651, 664–65, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Plaintiff's request for back pay and interest is similar to the request for retroactive payments in *Jordan.* The payments would be made out of the state treasury and would constitute an unconstitutional monetary award against a state. Therefore, the Plaintiff's claims for back pay and interest must be dismissed.

---

**4.** These cases hold that state officials, sued in their official capacities, are not immune from § 1983 suits for prospective injunctive relief. One may try to distinguish the cases by pointing out that the Defendant DMV is a state agency rather than a state official. State agencies, like state officials, do not receive Eleventh Amendment immunity from injunc-

tive relief in suits brought pursuant to § 1983. *Jones v. State of Michigan,* 525 F.Supp. 636, 639 (E.D.Mich.1981); *cf. also Antrican, supra,* at 188 (holding that the exception to Eleventh Amendment immunity applies even if the injunctive relief will actually affect the state itself, rather than the named state official).

## B. Defendant Holland's partial motion to dismiss

On August 26, 2002, Defendant Holland filed a motion to dismiss all claims against him with the exception of the § 1983 claim to the extent that it demands prospective injunctive relief. Plaintiff acknowledged that the § 1983 claim is limited by the Eleventh Amendment to a claim for prospective injunctive relief and attorney fees, and filed a voluntary dismissal of all the state law claims against Defendant Holland.

Although the Plaintiff's dismissal stated that nothing remained in dispute between the parties, it is not entirely clear whether Defendant Holland was moving to dismiss Plaintiff's claim for attorney fees. As noted *supra*, the Eleventh Amendment does not prevent awards of costs and attorney fees against states in § 1983 actions. That being the case, all of Plaintiff's claims against Defendant Holland in his official capacity are dismissed except for the claims for costs and attorney fees and the prospective injunctive relief. However, Plaintiff's "equitable relief," in the form of back pay and interest, are barred by the Eleventh Amendment. *See Edelman, supra.*

## C. Defendant Moore's Motion to Dismiss; Motions of Defendants Medford, Farnsworth, and Austin [Buncombe County Defendants] for Judgment on the Pleadings and for Lack of Jurisdiction

Plaintiff alleges that by turning the SBI report over to the Buncombe County Sheriff's Department, Defendant Moore is guilty of unlawful intrusion into private affairs and tortious interference with business relations. On August 26, 2002, Defendant Moore filed the present motion to dismiss for lack of subject matter jurisdiction (Fed.R.Civ.P. 12(b)(1)) and for failure to state a claim upon which relief may be granted (Fed R. Civ. P. 12(b)(6)). On October 3, 2002, the Plaintiff filed a voluntary dismissal of the claims against Defendant Moore in his official capacity only. Similarly, the Plaintiff alleges the same causes of action against the Buncombe County Defendants for disclosing the SBI report to Defendant Honeycutt as alleged against Defendant Moore for disclosing the report to the Buncombe County Sheriff's Department. On May 20, 2003, the Buncombe County Defendants filed motions for judgment on the pleadings and to dismiss for lack of subject matter jurisdiction.

The first issue is whether this Court has subject matter jurisdiction over the Plaintiff's claims against these Defendants. Since these claims involve no federal questions as defined by 28 U.S.C. § 1331 and do not meet the requirements for diversity jurisdiction under 28 U.S.C. § 1332, this Court may only hear Plaintiff's claims if they fall under the Court's supplemental jurisdiction as explained in 28 U.S.C. § 1367. That statute gives district courts jurisdiction over all claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy.... Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

The Plaintiff's action includes several claims against other Defendants that arise under federal law and over which this Court undisputedly has original jurisdiction under § 1331. They include two 42 U.S.C. § 1983 claims and one 42 U.S.C. § 1985 claim alleging that state actors violated Plaintiff's First Amendment rights by retaliating against him for engaging in protected speech (Counts I and II), a claim under the Federal RICO statute (18 U.S.C. § 1962) alleging widespread corruption within the DMV (Count V), and a

§ 1983 claim alleging that Woodfin town officials violated Plaintiff's substantive due process rights (Count VI). Therefore, the plain language of § 1367(a) confers on this Court jurisdiction over Plaintiff's state law claims against these Defendants only if those claims are part of the same case or controversy as any of his federal free speech, RICO, or due process claims.

Next, the Court must determine whether Plaintiff's state law claims against these Defendants are part of the same case or controversy as his federal claims against the other named Defendants. The Fourth Circuit has held that, although § 1367 did not become law until 1990, the test for whether two claims are part of the same case or controversy comes from a 1966 Supreme Court case which held that " '[t]he state and federal claims must derive from a common nucleus of operative fact.' " *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 662 (4th Cir.1998) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)) (emphasis omitted). The Court further held that federal courts would have jurisdiction over the state claims if " 'considered without regard to their federal or state character, [the claims] are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " *Id.* (quoting *Gibbs, supra* ) (emphasis omitted).

Lower courts have given widely differing interpretations of the Supreme Court's language in *Gibbs*. A Court within the District of South Carolina held that *Gibbs* requires "only a loose factual connection between the claims to satisfy the requirement that they arise from a common nucleus of operative fact. Only when the state law claim is totally different from the federal claim is there no power to hear the state claim." *Frye v. Pioneer Logging Machinery, Inc.*, 555 F.Supp. 730, 732 (D.S.C.1983). The Eastern District of Virginia, however, vehemently disagreed and wrote that the commonality must go to "something at the heart or center of the subject in question, not to a matter that is peripheral or tangential, not within the penumbra but in the umbra." *Mason v. Richmond Motor Co., Inc.*, 625 F.Supp. 883, 886–87 (E.D.Va.1986), *aff'd*, 825 F.2d 407, 1987 WL 37768 (4th Cir.1987). The *Mason* court elaborated by writing that "the facts common to each case must be the *operative* facts. Mere commonality of facts is insufficient." *Id.,* at 887. To the extent that the Fourth Circuit has resolved this disagreement, it seems to have taken the more expansive view of supplemental jurisdiction contemplated in *Frye*. The Fourth Circuit has held that for a court to exercise its supplemental jurisdiction under § 1367, "[t]he claims need only revolve around a central fact pattern." *White v. County of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir.1993).

■ With that guidance, the Court will now consider whether Bradley's state law claims against these Defendants are part of the same case or controversy as his federal claims against the other named Defendants. Quite clearly, his claims against these Defendants are completely unrelated to his federal claims based on free speech. The federal free speech claims, Counts I and II, allege that the Plaintiff engaged in protected speech when he reported violations within the DMV and the Woodfin Town Hall. The Plaintiff claims that the Defendants within the DMV and the Woodfin town officials violated his First Amendment rights by retaliating against him for reporting their misconduct. Complaint, ¶¶ 116–27. But the Plaintiff's decisions to report the corruption and any retaliation that resulted are in no way connected to the allegations that Defendant Moore released the letter to the Buncombe County Defendants who, in

turn, more than a year later, disclosed the letter to Defendant Honeycutt. In other words, the Plaintiff would still have reported the violations and suffered the retaliation even had any of these Defendants never possessed the letter. Even if the Woodfin town officials used the letter as a means of retaliation against the Plaintiff, the relationship between the claims is still tenuous at best. Therefore, Plaintiff's allegations against these Defendants and his free speech claims do not "derive from a common nucleus of operative fact," and are not part of the same case or controversy. *Axel Johnson, supra.*

■ Likewise, Plaintiff's federal RICO claim in Count V of the complaint is completely unrelated to his claims against these Defendants. The RICO claim involves corruption at the DMV, mostly in the form of extortion, that Plaintiff witnessed before the letter was even written. Complaint, ¶¶ 140–46. One could connect these actions by imagining that the alleged RICO violations led Plaintiff to contact the SBI, which led to the letter being written, which led to the letter falling into Defendant Moore's hands, which eventually led Defendant Moore to disclose the letter to the Buncombe County Defendants, which led the Buncombe County Defendants to release the letter to Defendant Honeycutt. That chain of events would encompass the RICO violations and the actions for which Plaintiff holds these Defendants accountable. But, as will be explained below in the discussion of Bradley's final federal claim, such a distant and tenuous connection between the causes of action is not sufficient to confer supplemental jurisdiction under § 1367.

Bradley's final federal claim is somewhat more closely related to his claims against these Defendants. In Count VII of the complaint, Plaintiff alleges that the Woodfin Mayor (Defendant Honeycutt), Aldermen (Defendants Leonard Clark, David Clark, Maney, Donald Honeycutt, and Haynes), and Town Attorney (Ferikes) violated his right to substantive due process when they fired him. *Id.*, ¶¶ 154–62. It is not completely clear from the complaint that Plaintiff alleges that the letter caused his termination, because he states that "[t]he true reason that Pete Bradley was suspended and then fired ... was that Pete Bradley stood up to Mayor Honeycutt." *Id.*, ¶ 159. But Bradley does allege that "knowledge of Pete Bradley's alternative lifestyle had affected [the Aldermen's] vote." *Id.*, ¶ 160. If Plaintiff is alleging the Aldermen violated his right to substantive due process by acting on knowledge that they obtained from the letter—and it is not clear exactly what Bradley alleges to have violated his right to substantive due process—then the connection between this offense and the alleged tortious conduct by Defendant Moore and the Buncombe County Defendants would not be so tenuous. Plaintiff's claim would be that Moore tortiously released the letter to the Buncombe County Defendants, who then tortiously disclosed the letter to Defendant Honeycutt, who then gave it to the Aldermen, who used the letter as a pretext for firing Plaintiff in violation of his right to substantive due process.

The Court will now consider whether such an assertion would render Plaintiff's state law claims related closely enough to the due process claim to give this Court supplemental jurisdiction. Although no court in the Fourth Circuit has so indicated, courts in other jurisdictions have held that mere "but for" causation is not a close enough relationship between state and federal claims to give a federal court supplemental jurisdiction. *See Salei v. Boardwalk Regency Corp.*, 913 F.Supp. 993, 998–1000 (E.D.Mich.1996) (holding that, although the defendant obtained a credit report that gave rise to a federal claim in the process of litigating a state claim, the

"but for" relationship was insufficient to bring about supplemental jurisdiction); *Benyi v. Broome County, N.Y.,* 887 F.Supp. 395, 401 (N.D.N.Y.1995) (holding that a state Freedom of Information Law claim arising when state officials allegedly failed to turn over material relating to a federal suit was not sufficiently related to that federal suit to invoke supplemental jurisdiction); *Chaney v. City of Chicago,* 901 F.Supp. 266, 270 (N.D.Ill.1995) (holding that a legal malpractice claim against a public defender for not getting plaintiff out of prison quickly enough was not part of the same case or controversy as a civil rights claim against a prison guard who beat plaintiff while plaintiff was incarcerated).

In all of the cited cases, one could say that but for the conduct giving rise to one claim, the other claim would never have arisen. But in all of those cases, the federal and state claims involved largely independent sets of facts, and the courts found that supplemental jurisdiction did not exist. Similarly, in the present case, although the release of the letter by Defendant Moore to the Buncombe County Defendants and the subsequent release of the letter to Defendant Honeycutt may be two of an infinite number of "but for" causes for what happened in Woodfin, the facts surrounding the claims are largely independent. Defendant Moore's actions with regard to the letter are not a substantial part of the events leading to the Plaintiff's termination. Likewise, where Mayor Honeycutt and the Woodfin Alderman got the letter is completely irrelevant to Plaintiff's substantive due process claim regarding how they used that letter. While the all of these causes of action do share some common facts, since the facts relevant to the state actions are irrelevant to the federal actions, one cannot say that the actions have common "operative facts." *Axel Johnson, supra.* Even with the Fourth Circuit's expansive reading of *Gibbs,* it is unlikely it intended to "read out" the requirement that the common facts be "operative." Therefore, there seems to be little reason for bringing these actions in one judicial proceeding, and the claims are not part of the same case or controversy. As such this Court does not have supplemental jurisdiction over Bradley's claims against the Defendant Moore or the Buncombe County Defendants.

Finally, the Court notes that the only federal claim that is even arguably related to the claims against these Defendants is Plaintiff's substantive due process claim. This claim seems "rather tenuous," and the Court wonders whether it was "asserted primarily to open up a federal forum" for the state law claim. *Council of Unit Owners of Wisp Condominium, Inc. v. Recreational Indus., Inc.,* 793 F.Supp. 120, 123 (D.Md.1992). Rights that trigger substantive due process analysis are rights that are "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg,* 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (internal citations and quotations omitted). Plaintiffs advancing arguments based on substantive due process must provide a "careful description of the asserted fundamental liberty interest." *Id.* (internal citations and quotation marks omitted). Bradley's complaint completely fails to articulate a "fundamental liberty interest" that has been infringed. Certainly no court has ever held that reporting corruption is protected by one's right to substantive due process, and Plaintiff's complaint does not seem to assert that the Woodfin officials were denying him the right to engage in consensual homosexual activity. *Lawrence v. Texas,* —— U.S. ——, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). "[A] federal district

court need not tolerate attempts by a litigant to litigate an essentially state law case in the federal forum." *Wisp, supra,* at 123. As such, because of the questionable nature of Plaintiff's substantive due process claim, this Court would hesitate to exercise jurisdiction over the state law claims even if they were part of the same case or controversy.

Since this Court has determined that it does not have subject matter jurisdiction, it will not consider the merits of Plaintiff's state law claims against Defendant Moore or the Buncombe County Defendants.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the motions of Defendants DMV and Holland, in his official capacity, to dismiss are **ALLOWED** as to Plaintiff's claims for back pay and interest contained in Count I of the complaint, and such claims are hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that the motions of Defendants DMV and Holland, in his official capacity, to dismiss are **DENIED** as to Plaintiff's claims for injunctive relief, costs and fees contained in Count I of the complaint.

**IT IS FURTHER ORDERED** that the Defendant Moore's motion to dismiss is **ALLOWED**, and Plaintiff's claims against the Defendant Moore in his individual capacity as contained in Counts XI and XIII of the complaint are hereby **DISMISSED** for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

**IT IS FURTHER ORDERED** that the motion of Defendants Medford, Farnsworth, and Austin to dismiss is **ALLOWED**; and Plaintiff's claims against these Defendants, in their individual capacities, as contained in Counts XI and XIII of the complaint, are hereby **DISMISSED** for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

**IT IS FURTHER ORDERED** that the Defendant Moore's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and the motion of Defendants Medford, Farnsworth, and Austin for judgment on the pleadings are hereby **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Plaintiff's motion to file responsive brief out of time is **ALLOWED**, and such brief is hereby deemed timely filed.