Justice Thomas,
with whom Justice Scalia joins, and with whom The Chief Justice joins as to all but Part III— B-3,
dissenting.
Petitioner Antonio Halbert pleaded no contest to charges that he sexually assaulted his stepdaughter and another *625 young girl. Michigan law did not provide Halbert — as a defendant convicted by a plea of guilty or no contest — an appointed attorney to help him prepare an application for leave to appeal to the Michigan Court of Appeals. The Court holds Michigan’s law unconstitutional as applied to Halbert. It fails, however, to ground its analysis in any particular provision of the Constitution or in this Court’s precedents. It also ignores that, even if there is a right to counsel in the circumstances at issue, the right is waivable and was validly waived here. I respectfully dissent.
W
To understand why the Court s holding is an unwarranted extension of our precedents, it is necessary first to understand the limits that Michigan places on the provision of court-appointed counsel for defendants who plead guilty or no contest. Before 1994, Michigan afforded all criminal defendants the right to appeal their convictions to the Michigan Court of Appeals. By the early 1990’s, however, the Michigan Court of Appeals had a backlog of thousands of cases awaiting decision, nearly a third of which were appeals by defendants who had pleaded guilty or no contest. People v. Bulger, 462 Mich. 495, 504, 614 N. W. 2d 103, 107 (2000). To reduce this backlog, Michigan voters amended the Michigan Constitution in 1994 to provide that “[i]n every criminal prosecution, the accused shall... have an appeal as a matter of right, except [that] an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court.” Mich. Const., Art. 1, §20; Bulger, supra, at 504,614 N. W. 2d, at 107. This constitutional amendment created a two-track system for Michigan defendants: The Michigan Court of Appeals must hear the appeals of those who dispute their guilt, while it may elect to hear the appeals of those who concede or do not contest their guilt of the substantive crime.
In 1999, the Michigan Legislature enacted the statute at issue here. It provides that, in general, a “defendant who *626 pleads guilty, guilty but mentally ill, or nolo contendere shall not have appellate counsel appointed for review of the defendant’s conviction or sentence.” Mich. Comp. Laws Ann. § 770.3a(l) (West 2000). Defendants who plead guilty or no contest do not, however, invariably lose the right to counsel on appeal; the statute contains exceptions to the general rule. The trial court must appoint appellate counsel for plea-convicted defendants if the State seeks leave to appeal, the defendant’s sentence exceeds the upper limit of the applicable minimum guidelines range, or the defendant seeks leave to appeal a conditional plea. § 770.3a(2). Further, the trial court may appoint appellate counsel for plea-convicted defendants who seek leave to appeal certain sentencing errors. §770.3a(3). Finally, if the Court of Appeals grants leave to appeal, “the case proceeds as an appeal of right,” Mich. Ct. Rule 7.205(D)(3) (2005), and the plea-convicted defendant is entitled to appointed counsel, Mich. Comp. Laws Ann. § 770.3a(2)(c). Thus, plea-convicted defendants lack appellate counsel only in certain types of cases, and only then when they are seeking leave to appeal.
HH
The majority nevertheless holds that Michigan’s system is constitutionally inadequate. It finds that all plea-convicted indigent defendants have the right to appellate counsel when seeking leave to appeal. The majority does not say where in the Constitution that right is located — the Due Process Clause, the Equal Protection Clause, or some purported confluence of the two. Ante, at 610-611. Nor does the majority attempt to anchor its holding in the history of those Clauses. M. L. B. v. S. L. J., 519 U. S. 102, 131, 133, 138 (1996) (Thomas, J., dissenting). Nor does the majority even attempt to ground its holding in the entirety of this Court’s jurisprudence, which does not require paid appellate assistance for indigent criminal defendants. Id., at 131-138. The *627 majority ignores the bulk of that jurisprudence and leaves those arguments unanswered.
Instead, the majority pins its hopes on a single case: Douglas v. California, 372 U. S. 353 (1963). Douglas, however, does not support extending the right to counsel to any form of discretionary review, as Ross v. Moffitt, 417 U. S. 600 (1974), and later cases make clear. Moreover, Michigan has not engaged in the sort of invidious discrimination against indigent defendants that Douglas condemns. Michigan has done no more than recognize the undeniable difference between defendants who plead guilty and those who maintain their innocence, in an attempt to divert resources from largely frivolous appeals to more meritorious ones. The majority substitutes its own policy preference for that of Michigan voters, and it does so based on an untenable reading of Douglas.
A
In Douglas, California granted an initial appeal as of right to all convicted criminal defendants. 372 U. S., at 356. However, the California Court of Appeal appointed counsel for indigent defendants only after determining whether counsel would be useful to the defendant or the court. Ibid. Thus the California appellate court was “forced to prejudge the merits” of indigent defendants’ appeals, while it judged the merits of other defendants’ appeals only after briefing and oral argument. Ibid.
In previous cases, this Court had considered state-imposed conditions like transcript and filing fees that prevented indigent criminal defendants from obtaining any appellate review. Ross, supra, at 606-607 (discussing Griffin v. Illinois, 351 U. S. 12 (1956), and its progeny). By contrast, in Douglas, California provided appellate review to all criminal defendants, but it did not provide a state subsidy for indigent defendants whose claims appeared unlikely to benefit from counsel’s assistance. This Court nevertheless held that when States provide a first appeal as of right, they must *628 supply indigent defendants with counsel. Ross, supra, at 607. In Ross, however, this Court declined to extend Douglas’ right to counsel beyond initial appeals as of right. States need not appoint counsel for indigent defendants who seek discretionary review in a State’s highest court or this Court. Ross, supra, at 616-618.
Michigan’s system bears some similarity to the state systems at issue in both Douglas and Ross. Like the defendant in Douglas, Halbert requests appointed counsel for an initial appeal before an intermediate appellate court. But like the defendant in Ross, Halbert requests appointed counsel for an appeal that is discretionary, not as of right. Crucially, however, Douglas noted that its decision extended only to initial appeals as of right — and later cases have repeatedly reaffirmed that understanding.[1] This Court has never required States to appoint counsel for discretionary review. Ross, supra, at 610; Murray v. Giarratano, 492 U. S. 1, 10-11 (1989); see also Pennsylvania v. Finley, 481 U. S. 551, 555 (1987). And an appeal permitted only “by leave of the court,” Mich. Const., Art. 1, §20, is discretionary — as the Michigan Supreme Court has recognized, Bulger, 462 Mich., at 519, 614 N. W. 2d, at 113; id., at 542-543, 614 N. W. 2d, at 125 (Cavanagh, J., dissenting). Neither Douglas nor any other decision of this Court warrants extending the right to counsel to discretionary review, even on a defendant’s initial appeal.
*629 Just as important, the rationale of Douglas does not support extending the right to counsel to this particular form of discretionary review. Admittedly, the precise rationale for the Griffin/Douglas line of cases has never been made explicit. Ross, supra, at 608-609. Those cases, however, have a common theme. States may not impose financial barriers that preclude indigent defendants from securing appellate review altogether. Griffin, 351 U. S., at 17-18 (plurality opinion); id., at 22 (Frankfurter, J., concurring in judgment); Burns v. Ohio, 360 U. S. 252, 258 (1959); Smith v. Bennett, 365 U. S. 708, 713-714 (1961). Nor may States create “ ‘unreasoned distinctions’” among defendants, M. L. B., 519 U. S., at 111 (quoting Rinaldi v. Yeager, 384 U. S. 305, 310 (1966)); Douglas, supra, at 356; Griffin, supra, at 22-23 (Frankfurter, J., concurring in judgment), that “arbitrarily cut off appeal rights for indigents while leaving open avenues of appeals for more affluent persons,” Ross, supra, at 607.
Far from being an “arbitrary” or “unreasoned” distinction, Michigan’s differentiation between defendants convicted at trial and defendants convicted by plea is sensible. First and perhaps foremost, the danger of wrongful convictions is less significant than in Douglas. In Douglas, California preliminarily denied counsel to all indigent defendants, regardless of whether they maintained their innocence at trial or conceded their guilt by plea. Here, Michigan preliminarily denies paid counsel only to indigent defendants who admit or do not contest their guilt. And because a defendant who pleads guilty “may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea,” Tollett v. Henderson, 411 U. S. 258, 267 (1973), the potential issues that can be raised on appeal are more limited, Bulger, 462 Mich., at 517, and n. 7, 614 N. W. 2d, at 112-113, and n. 7. Further, as the Michigan Supreme Court has explained:
“Plea proceedings are also shorter, simpler, and more routine than trials; the record most often consists of the *630 ‘factual basis’ for the plea that is provided to the trial court. In contrast with trials, less danger exists in plea cases that the record will be so unclear, or the errors so hidden, that the defendant’s appeal will be reduced to a meaningless ritual.” Id., at 517, 614 N. W. 2d, at 112.
When a defendant pleads in open court, there is less need for counsel to develop the record and refine claims to present to an appellate court. These are all “‘[Reasoned distinctions’ ” between defendants convicted by trial and those convicted by their own plea. M. L. B., supra, at 111 (quoting Rinaldi, supra, at 310).
The brief history of Michigan’s system confirms this. When Michigan voters amended the State Constitution to establish the current system, roughly 13,000 civil and criminal appeals per year clogged the Michigan Court of Appeals’ docket. Of those, nearly a third were appeals by criminal defendants who had pleaded guilty or no contest. Even though at the time plea-convicted defendants were appointed paid appellate counsel, few of these defendants were granted relief on appeal. Simply put, Michigan’s bar and bench were devoting a substantial portion of their scarce resources to thousands of cases with little practical effect. Reallocating resources was not “invidious discrimination” against criminal defendants, indigent or otherwise. Douglas, 372 U. S., at 356 (internal quotation marks omitted). It was an attempt to ensure “that frivolous appeals [were] not subsidized and public moneys not needlessly spent.” Griffin, supra, at 24 (Frankfurter, J., concurring in judgment).
Today’s decision will therefore do no favors for indigent defendants in Michigan — at least, indigent defendants with nonfrivolous claims. While defendants who admit their guilt will receive more attention, defendants who maintain their innocence will receive less. Even some defendants who plead guilty will feel the pinch, because plea-convicted defendants are entitled to counsel in preparing their leave applications if, for example, they appeal from conditional *631 pleas, Mich. Comp. Laws Ann. § 770.3a(2)(d) (West 2005), or their sentences exceed the applicable guidelines ranges, § 770.3a(2)(b). And any plea-convicted defendant granted leave to appeal is entitled to appointed counsel. § 770.3a(2)(c). Holding Michigan’s resources constant (since we have no control over the State’s bar or budget), the majority’s policy choice to redistribute the State’s limited resources only harms those most likely to have worthwhile claims — to say nothing of "the cost of enabling courts and prosecutors to respond to the ‘over-lawyering’ of minor cases.” Alabama v. Shelton, 535 U. S. 654, 681 (2002) (Scalia, J., dissenting); cf. Rompilla v. Beard, ante, at 403 (Kennedy, J., dissenting). Then, too, Michigan is under no constitutional obligation to provide appeals for plea-convicted defendants. Ante, at 610 (citing McKane v. Durston, 153 U. S. 684 (1894)). Michigan may decline to provide an appellate process altogether (since the Court’s ruling increases the cost of having a system of appellate review). Surely plea-convicted defendants would prefer appeals with limited access to counsel than no appeals at all.
B
The majority does not attempt to demonstrate that Michigan’s system is the sort of "unreasoned” discrimination against indigent defendants Douglas prohibits. Instead, the majority says that this case is earmarked by two considerations that were also key to this Court’s decision in Douglas: First, when a plea-convicted defendant seeks leave to appeal, the Michigan Court of Appeals adjudicates the leave application with reference to the merits. Ante, at 617. Second, the plea-convicted defendant who seeks leave to appeal is “generally ill equipped to represent [himself].” Ibid. Neither of these arguments is correct.
1
The majority reasons that in adjudicating an application for leave to appeal, the Michigan Court of Appeals “is *632 guided ... by the merits of the particular defendant’s claims.” Ante, at 619. The distinction that Douglas drew, however, was not between appellate systems that involve “some evaluation of the merits of the applicant’s claims” and those that do not, ante, at 618, but instead between discretionary and mandatory review. Supra, at 627-630. Of course the California intermediate courts in Douglas evaluated cases on their merits: These courts were hearing appeals as of right.
The Michigan Court of Appeals probably does consider “the merits of the applicant’s claims” in exercising its discretion; so do other courts of discretionary review, including this Court. For instance, this Court would be unlikely to grant certiorari in a case to announce a rule that could not alter the case’s disposition, or to correct an error that had not affected the proceedings below. This Court often considers whether errors are worth correcting in both plenary and summary dispositions. None of this converts discretionary, error-noticing review into mandatory, error-correcting review.
Likewise, the Michigan Court of Appeals is not required to hear particular cases or correct particular errors. It may elect to hear cases when it finds the trial court’s disposition questionable or dubious. Or it may elect to hear cases when it finds the trial court’s disposition important or interesting. For all we know, it may (and probably does) consider both. Regardless, the Court of Appeals’ decision to grant review remains “discretionary,” because it does not depend on “whether there has been ‘a correct adjudication of guilt’ in every individual case.” Ross, 417 U. S., at 615. Like other courts of discretionary review, the Court of Appeals may opt to correct errors, ante, at 617-619, and n. 3 — but it is not compelled to do so.
The majority appears to dispute that review before the Michigan Court of Appeals is truly discretionary, ante, at 618-619, and n. 4, but it provides no support for its speculation. Unlike the California Court of Appeal in Douglas, *633 the Michigan Court of Appeals has discretion in deciding whether to grant leave applications. See Bulger, 462 Mich., at 519, 614 N. W. 2d, at 113 (describing the issue as “whether a defendant is entitled under the federal constitution to appointed counsel in a first discretionary appeal from a plea-based conviction” (emphasis in original)); id., at 542-543, 614 N. W. 2d, at 125 (Cavanagh, J., dissenting) (“Nothing in our court rules or statute preclude the Court of Appeals from denying leave even though it may believe that the trial court’s decision was incorrect”). So far as we can tell, the Michigan Court of Appeals’ decision to grant or deny a leave application is not constrained by any state constitutional provision, statute, or court rule. The Michigan Court of Appeals may deny leave for any reason, or for no reason at all.
The majority’s holding suggests that Michigan’s system would pass constitutional muster if the Court of Appeals recited “lack of importance in the grounds presented” as its ground for denying leave, ante, at 618-619, or if its decisional criteria were set forth in a statute, judicial decision, or court rule, ibid. Yet the relevant inquiry under Douglas and Ross is whether the Court of Appeals is obliged to review the case — not whether the Court of Appeals must or does offer a particular ground for declining review.
2
The majority also asserts that, without counsel, plea-convicted defendants who seek leave to appeal are “generally ill equipped to represent themselves.” Ante, at 617. This overgeneralizes Douglas' rationale. The Douglas Court was concerned with the “barren record” that would follow a defendant on appeal. 372 U. S., at 356. For “where the record [was] unclear or the errors [were] hidden,” the appellate court would have difficulty detecting errors without the assistance of counsel. Id., at 358.
This is in part why this Court in Ross did not extend the right to counsel to discretionary review before the North *634 Carolina Supreme Court. Before that court, a defendant applying for leave had “a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case.” 417 U. S., at 615. Coupled with whatever the defendant might submit on his own, these materials provided the State Supreme Court “with an adequate basis for its decision to grant or deny review.” Ibid.
The majority does not argue that indigent plea-convicted defendants who file leave applications do so with a “barren record,” Douglas, supra, at 356, or that the Michigan Court of Appeals lacks an “adequate basis” for reviewing their leave applications, Ross, supra, at 615. The Michigan Supreme Court put it best:
“[Michigan’s] court rules require trial counsel to assist the defendant in organizing and presenting to the trial court any potential appellate issues that warrant preservation. Accordingly, a pro se defendant seeking discretionary review will have the benefit of a transcript, trial counsel’s framing of the issues in the motion to withdraw, and the trial court’s ruling on the motion.” Bulger, supra, at 518, 614 N. W. 2d, at 113; see also Mich. Ct. Rule 6.005(H)(4) (2005).
As in Ross, these materials aid both the plea-convicted defendant and the Michigan Court of Appeals in identifying claims appropriate for plenary consideration. A plea-convicted defendant does not face a record unreviewed by counsel, and he does not lack any reasoned treatment of his claims. And, again, plea proceedings tend to be more transparent than trials, supra, at 629-630; “less danger exists in plea cases that the record will be so unclear, or the errors so hidden,” Bulger, supra, at 517, 614 N. W. 2d, at 112, that the Michigan Court of Appeals will be unable to identify issues that deserve further examination on appeal. After all, the *635 Michigan Court of Appeals need know only enough to decide whether to grant further review. Should it elect to do so, Michigan law requires the appointment of counsel to aid in the appeal. Mich. Comp. Laws Ann. § 770.3a(2)(c) (2005).
The majority’s unwillingness to confront the distinctions between Michigan’s system and the California system at issue in Douglas is made clear by its reliance on Swenson v. Bosler, 386 U. S. 258 (1967) (per curiam). Swenson considered whether indigent defendants convicted at trial have a right to appointed counsel during their initial appeal as of right, even if the State provides indigent defendants with a trial transcript and a motion for a new trial prepared by trial counsel. Id., at 258-259. But Douglas had already answered that question, as this Court summarily declared: “[Appointed counsel] may not be denied to a criminal defendant, solely because of his indigency, on the only appeal which the State affords him as a matter of right.” 386 U. S., at 259 (emphasis added). Of course, Michigan’s entire argument is that there is a “[Reasoned distinctio[n]” between defendants convicted following trials and pleas, as there is between appeals as of right and discretionary review. M. L. B., 519 U. S., at 111 (internal quotation marks omitted); Brief for Respondent 28. This Court’s brief, per curiam opinion in Swenson did not consider, much less address, these arguments.
Lacking support in this Court’s cases, the majority effects a not-so-subtle shift from whether the record is adequate to enable discretionary review to whether plea-convicted defendants are generally able to “[n]aviga[te] the appellate process without a lawyer’s assistance.” Ante, at 621. This rationale lacks any stopping point. Pro se defendants may have difficulty navigating discretionary direct appeals and collateral proceedings, but this Court has never extended the right to counsel beyond first appeals as of right. Supra, at 627-628, and n. 1. The majority does not demonstrate that pro se defendants have any more difficulty filing leave appli *636 cations before the Michigan courts than, say, filing petitions for certiorari before this Court.
In fact, this Court receives thousands of pro se petitions every year that list “the date and nature of the judgment or order appealed from,” Mich. Ct. Rule 7.205(B)(1) (2005); “reei[te] the appellant’s allegations of error and the relief sought,” ibid.; and “se[t] forth a concise argument ... in support of the appellant’s position on each issue,” ibid. See this Court’s Rule 14 (setting forth analogous requirements for petitions for writs of certiorari). Michigan actually provides a three-page form application accompanied by two pages of instructions for defendants seeking leave to appeal after sentencing on a plea. It counsels defendants to “state the issues and facts relevant to the appeal,” and “state the law that supports your position and explain how the law applies to the facts of your case.” Ante, at 622 (internal quotation marks omitted). The majority gives no clue as to how Michigan could make its procedures for seeking leave to appeal less intimidating to the uncounseled. Ibid. Regardless, Michigan’s procedures are more than sufficient to enable discretionary review.
The majority then attempts to soften the blow by saying that it is doing the State a favor, because “providing indigents with appellate counsel will yield applications easier to comprehend.” Ante, at 623. Even assuming the majority’s paternalism is accurate, there is no evidence that the Michigan courts currently have difficulty adjudicating leave applications. At the least, the majority leaves unexplained why the Michigan courts have greater difficulty than do state and federal courts considering discretionary direct appeals and collateral proceedings. And even assuming the Michigan courts have special difficulty, it is unlikely any marginal gains will offset the harms wrought by the majority’s preference for redistributing resources to a set of generally less meritorious claims. Whether or not one agrees with *637 the policy choice made by Michigan voters, it is perfectly constitutional.
Ill
Even assuming that there is a right to appointed appellate counsel in these circumstances, the right, like the vast majority of other procedural rights, is waivable, despite the majority’s dictum to the contrary. Moreover, Michigan’s statutory prohibition on appointed appellate counsel does not prevent defendants from waiving any constitutional right to such counsel. And, in this case, Halbert’s waiver was knowing and intelligent.
A
Legal rights, even constitutional ones, are presumptively waivable. United States v. Mezzanatto, 513 U. S. 196, 200-201 (1995); see also New York v. Hill, 528 U. S. 110, 114 (2000); Peretz v. United States, 501 U. S. 923, 936 (1991) (“The most basic rights of criminal defendants are . . . subject to waiver”). The presumption of waivability holds true for the right to counsel. This Court has held repeatedly that a defendant may waive that right, both at trial and at the entry of a guilty plea, so long as the waiver is knowing and intelligent. Iowa v. Tovar, 541 U. S. 77, 88 (2004); Faretta v. California, 422 U. S. 806, 835 (1975); Adams v. United States ex rel. McCann, 317 U. S. 269, 279 (1942); Johnson v. Zerbst, 304 U. S. 458, 464-465 (1938). Michigan seeks a waiver no more extensive than those this Court has already sanctioned at other stages of a criminal proceeding; It asks defendants convicted by plea to waive the right to appointed counsel on appeal.
There may be some nonwaivable rights: ones “so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts.” Mezzanatto, supra, at 204 (internal quotation marks and brackets omitted). The right to appointed counsel on discretionary appeal from a guilty plea, however, *638 is not one of them. Even assuming that the assistance of appellate counsel enhances the reliability of the factfinding process by correcting errors in that process, it cannot possibly be so fundamental to the process that its absence “irreparably discredit^]” the federal courts, particularly since the Constitution guarantees no right to an appeal at all, e. g., M. L. B., 519 U. S., at 110, 120. Furthermore, as I have explained, the record of a plea proceeding is fully adequate to enable discretionary review and, in turn, to permit the correction of errors in the factfinding process when necessary. Swpra, at 634 (explaining that a plea-convicted defendant does not face a record unreviewed by counsel, and does not lack any reasoned treatment of his claims). And, finally, even if the reliability of the appellate process rather than the trial process is the relevant consideration here, the assistance of appellate counsel is not so fundamental to the appellate process that its absence deprives that process of meaning. Supra, at 629-630, 634-637. Cf. Hill, supra, at 116-117 (a constitutional protection may be waived even if it benefits society as well as criminal defendants).
Petitioner emphasizes the difficulty of the choice to which Michigan’s statute puts criminal defendants: proceed to trial and guarantee the appointment of appellate counsel, or plead guilty and forgo that benefit. But this Court has repeatedly recognized that difficult choices are a necessary byproduct of the criminal justice system, and of plea bargaining in particular. See, e.g., Mezzanatto, supra, at 210; Brady v. United States, 397 U. S. 742, 750 (1970). Michigan’s waiver requires a choice no more demanding than others criminal defendants regularly face.
B
The majority maintains, first, that Halbert could not waive the right to appointed appellate counsel because Michigan law afforded him no such right to waive; second, in dictum, that the right cannot be waived; and, third, that even if the *639 right can be waived, Halbert did not knowingly and intelligently waive it here. The Court is wrong in each respect.
1
The majority claims that “[a]t the time he entered his plea, Halbert, in common with other defendants convicted on their pleas, had no recognized right to appointed appellate counsel he could elect to forgo.” Ante, at 623. This assertion apparently refers to the Michigan statute, Mich. Comp. Laws Ann. § 770.3a (West 2000). At the time of Halbert’s plea, the statute provided that, if a defendant was convicted by plea, he generally could not receive appointed appellate counsel. The majority’s reasoning is flawed for at least three reasons.
First, the statement that “Halbert, in common with other defendants convicted on their pleas, had no recognized right to appointed appellate counsel,” ante, at 623, is either incorrect or irrelevant. If we view (as we must) the waiver decision from the perspective of Halbert and other defendants before entering a plea, the statement is wrong as a matter of Michigan law. The Michigan Court Rules applicable at the time of Halbert’s plea explicitly provided that he was entitled to appointed appellate counsel if convicted following a trial. Mich. Ct. Rule 6.425(F)(1)(b) (Lexis 2001) (“In a case involving a conviction following a trial, if the defendant is indigent, the court must enter an order appointing a lawyer if the request is filed within 42 days after sentencing or within the time for filing an appeal of right”). Michigan law thus gave Halbert, before entering a plea, the choice either to proceed to trial and guarantee himself appointed appellate counsel, or to plead guilty or no contest and forgo appointed appellate counsel in most circumstances.
Alternatively, by stating that “Halbert, in common with other defendants convicted on their pleas, had no recognized right to appointed appellate counsel,” ante, at 623, the majority might mean that Michigan law afforded Halbert no right to appointed appellate counsel following a plea-based eonvic *640 tion. If so, the statement is true but irrelevant. Of course Michigan law did not afford Halbert a right to appointed counsel once he pleaded no contest to the charged crimes. But the question is whether, by pleading no contest with knowledge of the condition (no paid counsel on appeal), Hal-bert accepted the condition and thereby waived his right to paid counsel on appeal. In other words, the question is whether Halbert had no right to counsel following his plea, because he had elected to forgo the right by pleading.
Second, even if the majority were correct about Michigan law, that is beside the point. At issue here is whether Hal-bert waived any federal constitutional right to appointed appellate counsel he might have enjoyed. Whether Michigan law provides for such counsel says nothing about whether a defendant possesses (and hence can waive) a federal constitutional right to that effect. That Michigan, as a matter of state law, prohibited Halbert from receiving appointed appellate counsel if he pleaded guilty or no contest is irrelevant to whether Halbert had (and could waive) an independent federal constitutional right to such counsel.
Third, the majority implies that if the existence of a right to paid appellate counsel had been something more than “no[t] recognized” at the time of Halbert’s plea, then the right would have been waivable, ibid. What this cryptic statement means is unclear. But it cannot possibly mean that only rights that have been explicitly and uniformly recognized by statute or case law may be waived. If that is what the statement means, then the majority has outlawed all conditional waivers (ones in which a defendant agrees that, if he has such a right, he waives it).
I take it instead that the reference to rights that are something more than “no[t] recognized,” and hence waivable, ibid., means not just rights that are uniformly recognized, but also rights whose existence is unsettled. If this understanding of the majority’s rule is correct, then the rule does not justify its claim that the constitutional right at issue was *641 wholly unrecognized. In fact, the existence of such a right was unsettled when Halbert entered his plea. By that date, November 7, 2001, the Michigan Supreme Court had issued Bulger, 462 Mich. 495, 614 N. W. 2d 103, sustaining over a vigorous dissent the practice of denying the appointment of appellate counsel on application for leave to appeal a plea-based conviction; and a Federal District Court had enjoined Michigan state judges from denying the appointment of appellate counsel to indigents pursuant to the state statute, on the ground that the statute was unconstitutional, Tesmer v. Kowalski, 114 F. Supp. 2d 622, 625-629 (ED Mich. 2000). The majority appears to focus on the fact that Michigan law did not afford defendants this right, but, again, state law is irrelevant to whether they possessed a federal constitutional right. The existence of that right was unsettled at the time of Halbert’s plea; hence, on what I take to be the majority’s own terms, the right should have been waivable.[2]
The majority attempts to deflect this criticism by saying that “nothing in Halbert’s plea colloquy indicates that he waived an ‘unsettled’... but assumed right to the assistance of appointed appellate counsel, postplea.” Ante, at 623, n. 7. But any arguable inadequacy in the plea colloquy is a separate issue from, and is irrelevant to, the question at hand: whether the right was recognized, and hence waivable, by Halbert (or any other defendant deciding how to plead), irrespective of the content of the plea colloquy.
*642 2
The majority compounds its error by expressing doubt in dictum that the right to appointed appellate counsel can be waived. Ante, at 624, n. 8. This ignores the well-established presumption of waivability, e. g., Mezzanatto, 513 U. S., at 200-201; Hill, 528 U. S., at 114. By ignoring the presumption, the majority effectively reverses it, espousing an analysis that is “directly contrary to the approach we have taken in the context of a broad array of constitutional and statutory provisions.” Mezzanatto, supra, at 200. For the proposition that Michigan’s waiver requirement is unconstitutional, the majority cites Douglas, 372 U. S., at 357-358, and M. L. B., 519 U. S., at 110-113, which explained that States cannot create unreasoned distinctions between indigent and moneyed defendants. Ante, at 624, n. 8. These cases have nothing to do with waiver; they determined only that certain rights existed, not that they both existed and were nonwaivable.
The majority seems to think that Michigan’s waiver requirement arbitrarily distinguishes between indigents and more affluent persons. As I have explained, however, the statute does no such thing. Rather, it sensibly differentiates between defendants convicted at trial and defendants convicted by plea. Supra, at 614-615. The majority’s dictum fails to persuade.
3
In this ease, the plea colloquy shows that Halbert’s waiver was knowing and intelligent, and that any deficiency in the plea colloquy was harmless. See 28 U. S. C. §2111; cf. Fed. Rule Crim. Proc. 11(h). First, Halbert understood he was waiving any appeal as of right: The trial court asked Halbert, “You understand if I accept your plea you are giving up or waiving any claim of an appeal as of right,” and Halbert answered “Yes, sir.” App. 22. Second, the court explained the statutory exceptions governing when counsel must or *643 might be appointed, and Halbert again indicated that he understood those conditions. Ante, at 629-630 (quoting colloquy). In context, the court’s enumeration of the limited conditions in which counsel might be appointed informed Halbert that counsel would not be appointed in other circumstances. Third, at the end of the colloquy, the court asked counsel, “Any other promises or considerations I should be made aware of?” App. 24, and “Do counsel believe I’ve complied with the court rule regarding no contest pleas?” id., at 25, both of which questions the prosecutor and defense attorney answered in the affirmative. Cf. Bradshaw v. Stumpf, ante, at 183 (“Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty”). Fourth, the court “f[ound] the plea understandingly made, voluntary and accurate.” App. 25. There can be no serious claim that Halbert would have changed his plea had the court provided further information.
* * *
Today the Court confers on defendants convicted by plea a right nowhere to be found in the Constitution or this Court’s cases. It does so at the expense of defendants whose claims are, on average, likely more meritorious. And it ignores that, even if such a right exists, it is fully waivable and was waived in this case. I respectfully dissent.

 Douglas, 372 U. S., at 357; Ross, 417 U. S., at 608 (“[Douglas] extended only to initial appeals as of right”); Evitts v. Lucey, 469 U. S. 387, 394 (1985) (Douglas “is limited to the first appeal as of right”); Pennsylvania v. Finley, 481 U. S. 551, 555 (1987) (“[T]he right to appointed counsel extends to the first appeal of right, and no further”); Coleman v. Thompson, 501 U. S. 722, 755 (1991) (“[Douglas] establishes] that an indigent criminal defendant has a right to appointed counsel in his first appeal as of right in state court”); see also Wainwright v. Torna, 455 U. S. 586, 587 (1982) (per curiam) (“[Ross] held that a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in this Court”).

 Moreover, the majority’s failure to make clear which sources of law are to be considered in deciding whether a right is “no[t] recognized,” ante, at 623, and hence nonwaivable, is bound to wreak havoc. For instance, suppose that a defendant waived the right to appeal his sentence after the regional Court of Appeals had held that the principle of Blakely v. Washington, 542 U. S. 296 (2004), did not apply to the United States Sentencing Guidelines, but before this Court held the contrary in United States v. Booker, 543 U. S. 220 (2005). The defendant could claim that, in his circuit, the Sixth Amendment right against the application of the Guidelines was “no[t] recognized,” and hence that the right was nonwaivable.